## ENRIQUE DEL POZO Y MARCOS et al. v. WILSON CYPRESS COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 184. Motion submitted October 5, 1925.—Decided November 16, 1925.

1. An appeal from a decree of the Circuit Court of Appeals entered prior to the Jurisdictional Act of February 13, 1925, was not affected by that Act. P. 87.
2. Under Jud. Code §§ 128, 241, a decree of the Circuit Court of Appeals in a case not of a class defined by § 128 as final in that court was reviewable by appeal to this Court if involving $1000, exclusive of costs. Id.
3. Upon a motion to affirm, questions determined on a former appeal of the case, after a full hearing followed by denial of a petition for rehearing, and which were so determined by reaffirming and applying earlier decisions which covered the questions—can not reasonably be regarded as debatable. P. 88.
4. On the former appeal in this case (236 U. S. 635) this Court held, in substance:

   (a) The purpose of the Act of May 23, 1828, c. 70, 4 Stat. 284, in confirming the land grant in controversy, was not to create a new right, but to recognize, in fulfilment of treaty obligations, a right conferred by Spain while the land was under her dominion;

   (b) As the grant contained a less acreage than a league square, the confirmation by that Act was subject only to a needed survey giving precision to the boundaries of the grant;

   (c) When the survey was made, and received the approval of the Surveyor General in 1851, the confirmation was complete and the land was thenceforth effectively separated from the public domain and subject to the taxing power of the State;

(*d*) The survey did not require the special approval of the Commissioner of the General Land Office; for under the law and practice of that period the approval of the Surveyor General sufficed;

(*e*) The patent, issued in 1895, was in the nature of a convenient muniment or record of the confirmation already effected by the Act of 1828 and the approved survey, rather than a conveyance speaking from the date of its issue. P. 86.

5. As the record shows that the original plat was approved in 1851, and the patent recites that the description of the land in the patent was taken from the approved field notes of the original survey, a mention in the patent of a descriptive plat and notes "authenticated and approved" by the Surveyor General shortly before its date, obviously refers to a plat and notes made from the approved survey of 1851 to provide a suitable description for the patent, authentication and approval of which by the then Surveyor General amounted to no more than a certificate that they were accurately taken from the earlier survey as shown on the records of his office. P. 88.

6. A claimant under a Spanish grant whose claim was confirmed by an Act of Congress and approved survey was not obliged by the Act of March 3, 1807, c. 46, 2 Stat. 445, to abstain from acts of proprietorship until subsequent issue of a patent. P. 89.

7. When title so passed by confirmation and approved survey, the doctrines of laches and adverse possession became applicable against the claimant; also a local statute of limitations which did not begin to run as to lands derived from the United States, "until the passage of the title" from the Government. P. 89.

8. Concurrent findings of fact of two federal courts below, having substantial support in the evidence, and sustaining defenses of adverse possession and laches, are accepted by this Court. P. 89.

299 Fed. 261, affirmed.

APPEAL from a decree of the Circuit Court of Appeals, which affirmed a decree of the District Court dismissing on the merits a suit brought by the appellants to quiet title to a confirmed land grant in Florida. The decision now reported was made on a motion to affirm the decree appealed from; an alternative motion to dismiss the appeal being overruled. Upon a former appeal, taken by the Cypress Company, this Court reversed a decree which had been rendered in favor of the plaintiffs. See 236 U. S. 635.

*Messrs. Joseph H. Jones, John C. Jones* and *William Whitwell Dewhurst* were on the briefs for appellants.

*Messrs. J. C. Cooper* and *Henry C. Clark* were on the briefs for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit to quiet title to a confirmed land grant in Florida. The plaintiffs claim as heirs of the original grantee. The defendant claims under tax deeds, and also asserts that the plaintiffs are barred from maintaining the suit, first, by adverse possession on the part of the defendant and those through whom it claims for the period fixed in the local statute of limitation, and, secondly, by inexcusable laches.

The grant was made in 1815 by Spain to Miguel Marcos, purported to cover 5,500 acres, and described the land in terms which made a survey essential to give precision to its boundaries. There was no survey during the Spanish dominion. After the cession to the United States, the heirs of the grantee presented a claim for confirmation to commissioners charged by Congress with the duty of examining and reporting on such claims. The commissioners found the grant valid and recommended it, with others, to Congress for confirmation. The report stated that the grant was without any condition. 4 Am. State Papers, Duff Green Ed., pp. 276, 283, 471.

By the Act of May 23, 1828, c. 70, 4 Stat. 284, Congress acted on the commissioners' report by confirming this and other claims, with the general qualification that if any claim exceeded the number of acres in a league square the confirmation was limited to such acreage, to be located by the claimants, within the original grant. That and other acts contemplated that the claims should be surveyed by way of precisely defining their boundaries and of con-

necting them with the public land surveys. Because of
delay in making the surveys, possibly resulting from inac-
tion on the part of claimants, Congress, by the Act of
June 28, 1848, c. 83, 9 Stat. 242, directed that the work
proceed as soon as practicable. Early in 1851 this claim
was surveyed under the direction of the Surveyor Gen-
eral, and on June 20 of that year the survey received the
approval of that officer. As surveyed the claim contained
5,486.46 acres.* In 1889 the grantee's heirs applied for a
patent for the claim as surveyed. The application was
denied by the Commissioner of the General Land Office
on the mistaken theory that the claim as surveyed was
more than a league square and therefore more than was
confirmed by the Act of 1828. On an appeal from that
ruling the Secretary of the Interior recognized that a
league square, in the sense of the confirmatory act, com-
prised 6,002.50 acres and directed that a patent issue for
the claim " in accordance with the survey." 18 Land Dec.
64. In 1895 a patent was issued under that direction.

The tax deeds under which the defendant claims were
issued—the earliest in 1852 and others before 1872. The
one of 1852 may be put out of view. The plaintiffs say
in their bill that the others " are fair upon their face "
but otherwise invalid. The bill contains a like statement
respecting the mesne conveyances whereby the defendant
succeeded to the tax title.

This suit by the heirs was begun in 1907. The present
appeal is the second one to this Court.

Originally the District Court and the Circuit Court of
Appeals ruled that the title was in the United States, and
the land not taxable, until the issue of the patent, and
therefore that the tax deeds, all of which preceded the
patent, were absolutely void and did not give even color
of title. In that view the District Court gave and the

---

* In some parts of the record the acreage is mistakenly given as
5,426.82.

Circuit Court of Appeals affirmed a decree for the plaintiffs, without considering the conformity of 'the tax proceedings to the local law or the questions arising out of the evidence bearing on the defenses of adverse possession and laches. On the first appeal to this Court that view was disapproved and the decree reversed. 236 U. S. 635. In keeping with prior decisions this Court held, in substance, that—

1. The purpose of the confirmatory Act of 1828 was not to create a new right but to recognize, in fulfilment of treaty obligations, a right conferred by Spain while the land was under her dominion;

2. As the grant contained a less acreage than a league square, the confirmation by that Act was subject only to a needed survey giving precision to the boundaries of the grant;

3. When the survey was made and received the approval of the Surveyor General the confirmation was complete and the land was thenceforth effectively separated from the public domain and subject to the taxing power of the State;

4. The survey did not require the special approval of the Commissioner of the General Land Office, for under the law and practice of that period the approval of the Surveyor General sufficed;

5. The patent was in the nature of a convenient muniment or record of the confirmation already effected by the Act of 1828 and the approved survey rather than a conveyance speaking from the date of its issue.

The cases of *Beard* v. *Federy,* 3 Wall. 478, 491, and *Boquillas Cattle Co.* v. *Curtis,* 213 U. S. 339, 344, were cited in support of the last proposition and were pertinent; but the proposition has further and special support in other cases, where rights based on tax sales, adverse possession, etc., occurring after a like legislative confirmation and before the issue of patent, were upheld, such as

*Langdeau* v. *Hanes,* 21 Wall. 521, 529; *Morrow* v. *Whitney,* 95 U. S. 551, 554, 555; *Joplin* v. *Chachere,* 192 U. S. 94.

On the first appeal this Court did not pass upon the question of the conformity of the tax proceedings to the local law, nor on those arising out of the evidence bearing on the defenses of adverse possession and laches. They had not been considered in the courts below and were of a kind that should be examined and determined in the first instance by the District Court and then, if need be, by the Circuit Court of Appeals. The decree of reversal was so framed as to require that this course be taken.

When the case got back to the District Court it was heard anew on the record before made. That court found that the defenses of adverse possession and laches were well taken in fact and in law, and accordingly entered a decree dismissing the bill on the merits. The Circuit Court of Appeals affirmed that decree. 299 Fed. 261. The plaintiffs then brought the case here on the present appeal.

Various motions have been submitted on briefs. One by the appellee asks that the appeal be dismissed as taken where an appeal was not admissible, or in the alternative that the decree be affirmed on the ground that the questions presented are so unsubstantial as not to need further argument. See rule 6, par. 5, 222 U. S. appendix and 266 U. S. appendix.

The motion to dismiss must be denied. The appeal was taken under §§ 128 and 241 of the Judicial Code as existing when the decree of affirmance by the Circuit Court of Appeals was entered, and is not affected by the subsequent Act of February 13, 1925, c. 229, 43 Stat. 936. Section 128 provided that the decisions of the Circuit Courts of Appeals in certain classes of cases should be final, in the sense of being not reviewable by this Court on writ of error or appeal; and § 241 provided that

the decisions of those courts in other cases should be subject to such a review where the matter in controversy, exclusive of costs, exceeded $1,000. This suit was not within any of the classes named in § 128, and the matter in controversy exceeded $1,000, apart from costs. Therefore the suit was one in which an appeal was admissible.

The motion to affirm is well taken. A reference to the questions presented and to what is plainly shown in the record will make this clear.

The appellants seek to reopen the questions determined on the first appeal. A full hearing was had at that time. The questions were not novel but covered by prior decisions. As a result of the hearing those decisions were reaffirmed and applied. There was also a petition for rehearing, which was denied. In this situation the questions reasonably cannot be regarded as now debatable.

The contention is made that the decision on that appeal proceeded on the assumption that the survey was approved by the Surveyor General in 1851, whereas according to the record the approval was given shortly before the patent issued, which was in 1895. But the record is plainly otherwise. It contains a certified copy of the original plat of the survey, as made in January, 1851, by Marcellus A. Williams, deputy surveyor; and the plat bears an endorsement signed by the then Surveyor General showing that he examined it, compared it with the field notes, and approved it, June 20, 1851. In addition, the patent recites that the description there given of the land was "taken from the approved field notes" of Williams' survey made in January, 1851. True, the patent also refers to a descriptive plat and notes "authenticated and approved" by the Surveyor General shortly before the date of the patent; but it is obvious from the patent and other parts of the record that the descriptive plat and notes so mentioned were made up from the approved survey of 1851 merely as a means of providing a suitable

and convenient description of the land for insertion in the patent. Their authentication and approval by the then Surveyor General amounted to no more than a certificate by him that they were accurately taken from the survey made and approved in 1851, as shown on the records of his office. See *Joplin* v. *Chachere, supra,* 102, 107.

A further contention is that there could be no laches, nor any adverse possession, prior to the issue of patent, because the claimants were prohibited by the Act of March 3, 1807, c. 46, 2 Stat. 445, from exercising acts of proprietorship until their claim was " recognized and confirmed " by the United States. A complete answer to this is that their claim was both recognized and confirmed by the Act of 1828, and the confirmation became effective when the claim was surveyed and the survey approved in 1851. The subsequent patent, although serving as a convenient muniment of title as confirmed, added nothing to the force of the confirmation. *Langdeau* v. *Hanes, supra,* 530, and other cases before cited.

Reliance is also had on a provision in the local statute of limitation declaring that, as respects lands derived from the United States, the period of limitation should not begin to run " until the passage of the title " from the Government. The answer to the last contention is equally good here. Such title as the United States possessed passed to the claimants when the confirmation became effective through the approved survey. The cases just cited are conclusive on this point.

Lastly, complaint is made of the findings of fact sustaining the defenses of adverse possession and laches. The courts below concurred in these findings and explained them in considered opinions. The record shows with certainty that the findings had very substantial support in the evidence. This Court accepts concurrent findings with such support. *Morewood* v. *Enequist,* 23 How. 491, 495;

*Stuart* v. *Hayden,* 169 U. S. 1, 14; *National Bank of Athens* v. *Shackelford,* 239 U. S. 81, 82; *Yuma County Water Ass'n.* v. *Schlecht,* 262 U. S. 138, 146; *United States* v. *State Investment Co.,* 264 U. S. 206, 211.

No question is presented which can be regarded as debatable in this Court, so there is no need for holding the case for further argument.

*Decree affirmed.*