THE TOWN OF MT. VERNON, Appellant, v. AMELIA A. YOUNG, and GEORGE W. YOUNG.

Streets: DEDICATION: EVIDENCE. In an action by a town to quiet title
1 to a strip of land claimed to have been dedicated to the public as a street, the evidences of the owner's intention to dedicate the same, as gathered from the plat itself, are considered and held insufficient to show dedication.

Rights of public to land for streets: EVIDENCE. Before the courts
2 will dispossess a citizen of real property over which he has long exercised an ownership, on a claim that it was dedicated to the public as a street, the right thereto must be established by clear and unequivocal evidence. Evidence considered and held insufficient to show a right in the public to the land in controversy.

Burden of proof. When a town seeks to acquire title to land as part
3 of a public street, it has the burden of showing a better right and title than those claiming private ownership.

Common law dedication. A common law dedication of land, as a
4 street, cannot be established without either showing that the same had been thrown open to or used as a street, or that the owner had sold or offered for sale lots bordering on the same, with the express or implied representation that the same was a street.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

WEDNESDAY, JULY 13, 1904.

ACTION in equity to quiet the title of the plaintiff town to certain land claimed to have been dedicated to the public as a street. Decree for the defendants, and the plaintiff appeals.— *Affirmed.*

*Voris & Haas,* for appellant.

*C. W. Kepler,* for appellees.

WEAVER, J.— On November 22, 1860, Samuel K. Young was the owner of a triangular tract of land in the northeast corner of the northwest quarter of the southwest quarter of section 10, township 82, range 5, within the limits of the present town of Mt. Vernon. The lands adjoining this tract on the east and on the south and southwest had prior to that time been platted into blocks, lots, and streets. On the date named Mr. Young caused said tract to be platted as an addition to the town of Mt. Vernon, and filed a map of the survey in the office of the recorder of the county. The map, as it appears of record, is as follows:

To this map was appended a description of property, which states, among other things, that the " lots are 66 by

132 feet, except those which are fractional, and also except lots numbered 5 and 11, which said lots are 82½ feet front, and they are as designated by the numbers in feet placed on the boundary line. Stones have been placed as designated on the plat. The streets are continuations of them of the same names in other parts of the town and bear as marked." Following this description is a deed or declaration of dedication by said Young and wife, in which, after certifying and acknowledging the plat, it is said: "And we do hereby set apart for public use as public highways all the land described in said map as streets, the width and dimensions shown by said map, reserving at the same time all the land included in said map as private property, except that portion which is designated as streets." The property in controversy is the strip or lot sixty-six feet in width lying between lot 3 on the east and lots 4 and 12 on the west. It is the contention of the town authorities that the effect of the plat and deed was to dedicate said strip to the public as a street. The defendants, who are the widow and son of Samuel K. Young, deny that the plat or deed show any dedication of the property to public use, and deny that it has ever been opened, used, or recognized as a public way. They also plead that they have been in actual, notorious, and exclusive possession of the property under claim of right for a period of forty years, improving and occupying it as their own, to the knowledge of the town authorities, and that any claim of right in the town has long since been lost by abandonment and estoppel. The court below having found against the plaintiff's claim, we are asked to reverse its decision as being against the clear preponderance of the testimony.

I. We first inquire whether the plat, in or of itself, indicates an intention on part of the proprietor to dedicate this ground to street purposes? The appellant's contention in

1. STREETS: dedication; evidence. the affirmative of this proposition is based largely upon the facts; (1) that the tract is marked with no number, and interposed between lots

which are consecutively numbered; (2) it is more than one hundred and thirty-two feet in length, and therefore does not conform to the written description attached to the plat; (3) the law in force at that time regulating the survey and platting of town lots required the placing of a stake in at least one corner of each lot, and the placing of a stone in a permanent manner " at some point in every street " — all of which should be indicated upon the map filed for record — and the map in this instance reveals a stone placed at the southwest corner of the strip in dispute; and (4) this strip is of such width and is so located as to form an extension of the street (known in the record as " Penn Street ") in the old plat bounding Young's Addition on the southwest. While these, and perhaps, other matters upon the face of the map have some tendency to support the appellant's claim, we are of the opinion that the plat as a whole does not afford satisfactory evidence of the alleged dedication. On the contrary, it seems to afford affirmative proof of the proprietor's intent to reserve this particular tract to his own use. It is not named or otherwise expressly designated as a street. It is separated from Main street at the south end and from the adjoining land at the north end by distinctly marked boundary lines, leaving it wholly without any apparent connection at any point with any other public way; while all other streets in the plat are designated by appropriate names, and the map shows them opening at each terminus into other highways. The stone found at the southwest corner of the tract in question does not necessarily mark a street corner, as will be noted by reference to other stones set in the outer boundaries of the addition; and, if intended to indicate a street line at all, is in proper position to mark the north boundary of Main street. Penn street, in the old plat, is but sixty feet in width, while this strip of land claimed as an extension of said street is sixty-six feet wide, a discrepancy for which, on appellant's theory, there appears no adequate explanation. In 1860 there was no street into

which such an extension of Penn street would open, or with which it could connect on the north, the land adjoining the Young tract at that point being then private property. Had there been any intention to dedicate this land to the public, we think it very improbable that the map would have wholly omitted all the usual indications of such purpose. The plat is small, containing few lots, and so great an oversight or mistake could scarcely have escaped notice.

We do not overlook the claim made by appellant in argument that the original plat or map shown in evidence has been changed by inserting the lines which close the ends of the disputed strip and by erasing the street name written in the space between lots 3 and 4. It is to be conceded that an inspection of the map gives support to this contention, and it becomes, therefore, a matter of importance to inquire whether such change was made before or after the dedication of the plat became effective by filing in the recorder's office. It is admitted by counsel that said record, which was made in November, 1860, corresponds in all essential respects with the lines upon the map in its present condition, and, if such record be correct (as presumably it is), the changes referred to must have been made before the papers were filed. The only suggestion that the record itself has been tampered with is in the testimony of a woman living in the neighborhood, who says that in the year 1888 she looked at the book in the recorder's office, and the record at that time showed " no line drawn across the south end of the land in controversy." Without in any manner impeaching the good faith of the witness, we think her statement insufficient to overcome the verity of the record. The book itself was exhibited to the trial court, and it is not pretended that it exhibits any appearance or evidence whatever of erasure or change. The witness does not claim to have seen the name of " Penn " or any other street upon this portion of the map, and it is easier to believe that she is mistaken as to the nonexistence of the map line, than to believe the proprietor of the plat and the

sworn custodian of the record have been guilty of a forgery of evidence, or that such a change could have been made without leaving some visible sign of the spoliation.   Indeed, the most reasonable conclusion in the premises is that the surveyor first drew the map leaving this tract open as a street, and having the name "Penn street" written thereon, and that after this was done, and before filing the papers for record, the proprietor, either because the map had not been made according to his wish, or because he had changed his mind in reference thereto, amended it by drawing a line at either end of the open space and erasing the street name therefrom, but neglected to give to said tract any distinctive lot number.   When we stop to consider that at this time Mt. Vernon was a small village, needing few streets; that this street, if dedicated, would form a mere short cul-de-sac down a somewhat sharp declivity; and that without it every lot in the addition had frontage upon other streets — we readily see that such act upon his part would be neither unnatural nor unreasonable.

II.   Nor is the case materially stronger for appellant if to the evidence afforded by the map and deed, we add the circumstances surrounding the possession and use of the prop-

2. RIGHTS OF PUBLIC TO LAND FOR STREETS: evidence.

erty after the platting of the addition.   There is considerable dispute whether Mr. Young fenced in this tract prior to the year 1870, but in our judgment, the preponderance of the testimony sustains the defendant's contention that at all times from the year 1860 to the beginning of this controversy in 1899 he had the larger part, if not all, of the land inclosed by fence, using it as private property.   If this be not true as to a portion of the time in the earlier part of the period mentioned, it is quite certain that no other use was made of this way by the public than is usually made of open spaces and vacant lots in most of our cities and towns — a use which depends upon the license or sufferance of the owner, and is neither given nor taken as matter of public right.   There is also evidence tend-

·ing to show that on several occasions Mr. Young said that
" whenever it was necessary to open the street he was willing
to have it done," or would open it when demanded or needed,
or words to that general effect; but, conceding this fact to be
established, it falls short of being an admission that he had
formerly dedicated such street.    It indicates at most his re-
alization that at some time public convenience might demand
a street at that point, and his willingness to yield to that
demand when made.    His conduct affords most satisfactory
proof that he did not in fact concede the right of the town to
open such a street without his consent or process of condem-
nation.    Even upon the showing of the appellant, he inclosed
the property by a substantial fence not later than the early
70's, and continued the same until the town authorities for-
cibly removed it in the year 1899.    He constructed and main-
tained a sidewalk along the front of the tract on the north
side of Main street.    Along the curb line of Main street he
planted and maintained shade trees, now grown to large size..
In enlarging his dwelling house, standing upon the west side
of this tract, he extended the building, or at least the steps
thereto, several ·feet into the space now claimed as a street.
On the opposite side he constructed and kept for many years
a tenant house extending ten feet into the alleged street.
The ground has also been improved and ornamented with
trees and shrubbery.    All this was done in the sight and with
the knowledge of the town and its officers, and without objec-
tion or remonstrance on their part for the period of an aver-
age lifetime; and, without holding that mere lapse of time
or failure to assert the public right would of itself estop the
town to assert the existence of the street, it does afford good
reason for insisting that, before dispossessing the citizen of
property over which he has so long exercised ownership, the
public right ·thereto shall be established by clear and un-
equivocal testimony.    *Weber v. Iowa City,* 119 Iowa, 633;
*Corey v. Ft. Dodge,* 118 Iowa, 742; *State v. Welpton,* 34
Iowa, 144.

This is not one of those instances where a lot owner reaches out and takes in land which has admittedly once been dedicated to the public. In all such cases the burden is upon

**3. BURDEN OF PROOF.** the claimant to show that in some manner the public right has been extinguished. But in the case before us Mr. Young was originally the undisputed owner of the land, and, unless he parted with it, the title is now in his widow and heir, who are the appellees herein. The appellant is attacking their title and right of possession, and must be held to have the burden of showing a better right and title in itself. In this, we think, it has failed.

It is urged upon our consideration that dedication may be shown by conduct as well as by deed, and that the facts show a dedication which would be good even without the

**4. COMMON LAW DEDICATION.** statute. We are not disposed to contend that a dedication must in all cases be made in statutory form; but we find here an utter absence of the usual *indicia* of a common-law gift of land to public use for street purposes. There is no satisfactory showing that this land was ever thrown open to or used by the public for a highway, and there is no showing whatever that the proprietor ever sold or offered for sale any lot or lots bordering on this land with the express or implied representation that it was a street. Without the presence of one or both of these circumstances, we think no common-law dedication of a street has ever been upheld by this court. *Shea v. Ottumwa,* 67 Iowa, 41; *Byerly v. Anamosa,* 79 Iowa, 204. See, also, *Municipality v. Orleans,* 36 Am. Dec. 624; *Bissell v. Railroad Co.,* 23 N. Y. 61; *State v. Welpton,* 34 Iowa, 144; *Fisk v. Havana,* 88 Ill. 208. In the *Welpton Case, supra,* we said: " A dedication of land to the use of the public rests upon the intention and clear assent of the owner of the soil. When acts are relied upon to establish it, they must be inconsistent and irreconcilable with any inference except the *animus dedicandi;* they must be unambiguous and unequivocal." It seems very certain that the evidence in the case at bar falls far short of the

requirement of the rule here quoted.   The circumstances re-
lied upon by appellant are at best ambiguous, and all may be
reconciled with the claim of title in the appellees.

The decree appealed from is right, and must stand.—
AFFIRMED.