ELMIRA BRIDGES, et al., Appellees, v. INCORPORATED TOWN OF GRAND VIEW, et al., Appellants.

**Boundaries:** STREET LINES: CHANGE: BURDEN OF PROOF. Where a street line was conceded to be lost and was without visible monuments, and the abutting owner had held the undisputed possession up to the line claimed by him for a long series of years, which line corresponded with other lot lines in the direction in which it extended, the burden was upon the town, in an action to enjoin a change in the line, to show that the boundary as claimed by the abutting owner was incorrect.

**Same:** ADVERSE POSSESSION: ESTOPPEL. While an abutting owner cannot by limitations acquire part of the street adversely to the municipality, still the municipality may estop itself by the acts of its officers and citizens from claiming that the street extends beyond a given line, although the same may not be the true line.

**Same:** CHANGE OF BOUNDARY: EVIDENCE. In this action by an abutting owner to restrain the town from changing the line of the street, the evidence is reviewed and held insufficient to show that the line claimed by plaintiff was not the true line.

**Same:** ESTOPPEL. Acquiescence by a municipality for a long series of years in the erection and maintenance of houses, sidewalks, fences and the general improvement of abutting property with respect to a given line corresponding to a similar line of an adjoining block, and the removal of such part of the improvements as would permit the establishment of the line as contended for by the city would render the premises unsightly, and in fact destroy and leave a portion of the improvements in the street, would estop the city from establishing another line as the true line.

*Appeal from Louisa District Court.*—HON. JAMES D. SMYTH, Judge.

WEDNESDAY, FEBRUARY 12, 1913.

THIS is a controversy over the street line at the east end of lots, 1, 2, 3, 4 and 5, in block 22, Springer's addition to the town of Grand View, in Louisa county. These lots front on Market street, and occupy about one-half the block, lying between Vermont and Monroe streets in said town. Defendants had served, notice upon plaintiffs to tear up and remove a sidewalk and fence along the front of these lots within twenty days from the giving of the notice; and plaintiffs brought this action to restrain the said defendants from interfering with the walk or the fences, or from changing the line between Market street and the lots before mentioned. Defendants claimed that the improvements were in the street and constituted a nuisance and an obstruction, which they were in duty bound to remove. On the issues joined the case was tried to the court, resulting in a decree granting plaintiffs part of the relief claimed, but fixing the line at a point intermediate between the lines claimed by the respective parties. Defendants alone appeal.—*Affirmed.*

*H. O. Weaver* and *F. M. Molsberry,* for appellants.

*C. A. Carpenter* and *Oscar Hale,* for appellees.

DEEMER, J.—Plaintiffs claim to have occupied up to a certain line between their lots and the street for many years; that this is the true line originally run in marking out Springer's addition upon the ground; that they have title by reason of adverse possession; and that, in any event, defendants are estopped from claiming that the line which they now insist upon as the true one is not the one originally established, because with the knowledge of the town and its officials they have laid sidewalks, built fences, improved their properties, and located their houses with reference to the line claimed by them to be the true one, and that, if the city is now permitted

to change it, it will result in great and irreparable injury. On the other hand, defendants insist that another line is the true one; that whatever use plaintiffs made of the town's property was permissive, and could not in any event be adverse as against the town; and that there is no estoppel for the reason that plaintiffs knew, or should have known, that the line claimed by them was not the true one; that they made their improvements subject at all times to the demand of the city; that they should vacate that part of the property which was in the street, and that, in any event, plaintiffs did no more than erect temporary fences, put out sidewalks and make slight and temporary repairs upon their property.

I.   The first question which arises in all cases of this character is, Where is the true line?   That is to say, where is the line which was run by the surveyor, and marked out upon the ground?   It is conceded by both parties that this line has been lost, and that there are now no known or visible monuments upon the ground.   Plaintiffs, however, have an advantage here because they show possession to a given line unopposed and uncontested for a long series of years, and this line, in so far as disclosed by the record, corresponds with other lines farther north, when projected in that direction.   So that under the conceded facts the burden is upon the defendants of showing that the line now claimed by plaintiffs or rather the line established by the trial court is not the correct one, and this they must do by a preponderance of competent testimony.

1. BOUNDARIES: street lines: change: burden of proof.

Passing that point, and conceding, as we must, that plaintiffs could not gain title to any part of the street by adverse possession against the town, for the reason that under our holdings, the statute of limitations will not run against a town in any matter affecting its governmental powers (see *Quinn v. Baage*, 138 Iowa, 426; *McClenehan v. Town of Jesup*, 144 Iowa, 352, we, nevertheless, have the issue of estoppel; for, while the

2. SAME: adverse possession: estoppel.

statute of limitations may not run against a town, it may, by the conduct of its citizens and of its officers, estop itself from claiming beyond a given line, although another may be, in fact, the true one according to the plat.   This doctrine has been placed sometimes upon the theory that the town did not accept the grant tendered it by the owner of the platted property to any greater width than it assumed control over, and sometimes upon the ground that one may not stand by and see valuable improvements made upon his property, on a claim by the one who makes them that they are on his own property, without having his mouth closed from asserting that the improvements were upon his, the owner's property, and that he will tear them down.   Where the doctrine is based wholly on the theory of estoppel by reason of the making of valuable improvements, which will be destroyed or injured in case they are torn down or removed, the element of time does not figure after the improvements are in fact completed upon property which is claimed as of right.   Notwithstanding some dispute between counsel as to the proper rules for such cases, the foregoing are well established by authority.   See *Corey v. City of Ft. Dodge,* 118 Iowa, 742; *Mt. Vernon v. Young,* 124 Iowa, 517; *Johnson v. City,* 153 Iowa, 493; *Sutton v. Mentzer,* 154 Iowa, 1; *McElroy v. Hite,* 154 Iowa, 453; *Eldora v. Edgington,* 130 Iowa, 151; *Sioux City v. Railroad Co.,* 129 Iowa, 694; *Brown v. City,* 117 Iowa, 302; *Biglow v. Ritter,* 131 Iowa, 213; *Quinn v. Baage,* 138 Iowa, 426; *Baker v. Railroad Co.,* 154 Iowa, 228; *McClenehan v. Jesup,* 144 Iowa, 352.   While possession may not always amount "to nine points in the law," uninterrupted, undisputed, and unchallenged possession of a strip of ground abutting upon a street for a long period of years, followed by the making of improvements thereon, with reference to a given line, casts the burden upon a town or city of showing that the line thus claimed is not the true one.   As said in *Mt. Vernon v. Young,* 124 Iowa, 517, "Where ground has been improved and ornamented with trees and shrubbery, and used as private property within the sight

and with the knowledge of the town and its officers, and without objection or remonstrance on their part, for the period of an average lifetime, before dispossessing the citizen of such property, the public right thereto must be established by clear and unequivocal testimony.'' So that the burden is upon the town of showing in the first instance that the line which plaintiffs claim is the true one is not the one located upon the ground at the time the original plat of the addition was made.

The town of Grand View was platted in July of the year 1841. By this plat the lots were sixty by one hundred and forty-two feet; and the alleys were sixteen and

3. SAME: change of boundary: evidence.

one-half feet wide. Market street was shown on the plat to be sixty-six feet wide. This plat was on the S. W. ¼ of section 22, in township 75, range 3 W., but the record does not show which part of the quarter section was covered by the plat. Springer's addition to the town was platted June 7, 1843, and a part of it overlapped the original town plat, but the record does not show in what section, township, or range the addition was to be found. It does show that the lots were sixty feet in width by one hundred and forty-two in depth, that the alleys were sixteen feet wide, and the streets from sixty-six to seventy-five feet in width; Market street being sixty-six feet. There is nothing whereby to locate the plat according to lines or corners, except a reference to the original plat of the town, and that contains no definite location. The original plat showed a variation of the streets from the true meridian line of seven degrees east. Plaintiff Hidelbaugh owns lots 1 and 2, and his co-plaintiff, Bridges, owns lots 3, 4, 5, and 6, in block 22, of Springer's addition. These lots face east on what is designated as Market street; and Hidelbaugh's dwelling is on lots 1 and 2 and Bridges' on lot 5. Monroe street is north of the block and Vernon on the south. In the year 1907 the town had an engineer make a survey and plat of the town, and he or his assistant went to the county records, and took

what purported to be copies of all the plats therefrom. The surveyor went to the corner of a building located at the southwest corner of Monroe and Main streets (Main street being the first one west of Market, and according to the plat seventy-five feet in width), and, assuming that corner to be correct, he made his resurvey of the lines and corners of the lots and streets of the town with its additions, and carried the line of Market street west and upon the plaintiffs' lots, so that it took three and one-half feet off the porch on Hidelbaugh's house, and twenty inches off of the porch to plaintiff Bridges' house, leaving that much of each property in the street. The notes accompanying the plat indicated that a stone had been placed at the northeast corner of block 23 of Springer's addition, being at the northeast corner of the block immediately west of the one in which plaintiffs' lots are situated. But the surveyor testified that he could not find this stone, and that: "I had no other definite starting point or definite data, excepting that corner and location of buildings on that same intersection. I found no stone or monument of any kind at the bank corner, except the building itself. I went by the buildings themselves, and what was told me with reference to where the lines originally were accepted by those who lived there and claimed to know." He also testified: "I think I also used the section line or half section line, and checked up the existing old fences, and I think I found a stone at the northwest corner of block 1 in Jackson's addition. There is also a stone which I found located on the east side of Jefferson street, about 20 feet south of the north line of Jackson street. These were shown on the notes of the recorded plat which I had received, and one of the two stones that I have just described was a permanent boundary erected there by the surveyor who laid out these other plats. The other is said to be the boundary of a one-acre tract lying north of what is known as Depot street, and which is east of Jefferson street. From taking measurements from these stones, I could not determine whether or not the corner

of this bank building was an accurate boundary. The investigations that I made indicated that the bank corner is a correct corner; that is from lines, a correct number of lines that existed, that is, from old fence lines. It is generally true that there is some doubt about the exact location of streets and alleys, but I think that this survey is as near correct as possible to be made. This plat that purports to be a plat of Springer's addition, and the town of Grand View don't show any connection with any government corners to be located in any particular tract of land, unless the description in the plat, which I have not read, gives it." He also said: "I found a stone marked on this plat as a section corner, and found a stone on the section line a quarter of a mile west of town. I didn't take any means to verify whether these were government corners. The principal monument was the corner of Garret building as the starting point and existing lines on the ground; that is, by investigation to determine, in my mind, the true lines. The wedge-shaped piece does not appear on the plat book. This strip is 1,785 feet long." Another surveyor, who had been a county surveyor since 1857, testified: "I have surveyed in and around Grand View, and have had occasion to examine the records and plats with reference to Springer's addition, and have tried to be familiar with these records. I have had a good deal of difficulty to definitely locate Springer's addition from the town of Grand View. There is nothing in the plats that shows the town's relation to the sections. I think I established the corner at Garret's store. The corners conform with the streets, as to the fences; that is, as near as I could, but I never felt certain after all. I think I found a stone at the corner of block 22 of Springer's addition in 1860, and I have never been able to find it since. I do not know whether the Garret building was established at the place where I placed the northwest corner. There was a stone at the southwest corner of the block. I recollect that I put the stone there some time, but can't tell how I arrived at that corner. I do not know when I done it, and have no

record that would show.  . . .  I frequently make surveys
in Grand View.  I tried, of course, to find the original stone.
I didn't succeed in that.  In an early day I found a stone
at the corner of Dr. Higley's lot, in block 22, of Springer's
addition.  I think I must have used that as a starting point.
I never found anything else.  I think the Garret building
and the building south agree.  There may be a difference of
a foot.  . . .  John R. Sisson made the old survey of the
Higley lot.  He was then county surveyor.  It is the one Mr.
Bridges lives on now.  Based on the Sisson survey, I made a
survey this summer that I thought maybe might give some
light on it.  I thought it was based on the Sisson survey be-
cause Dr. Higley was the owner of where the Bridges prop-
erty is now, and I thought he knew where the corners were
when he set that barn foundation.  I took the corner of the
Higley barn, a brick corner.  It has been in position fifty
years.  It stands immediately west of the Bridges property,
across the alley.  Taking the pier of the Higley barn, I
made a survey from that.''  The survey made by this sur-
veyor places the street line one and three-tenths feet east
of the one run by the town surveyor, at the northeast corner
of block 22, and four feet east of that line at the southeast
corner.  This old surveyor also testified: ''There is a stone
at the northwest corner of the Higley lot straight west of
the Bridges lot.  Measuring from the pier back to this corner
I think is one hundred and forty-four feet.  The length of
the lot as shown by the plat is one hundred and forty-two
feet.  The town plat gives the alley as sixteen and one-half
feet wide, Springer's addition sixteen feet.  They have been
in the habit of making it either way because of that dis-
crepancy in the plats.  My measurement brought the line
18 inches east of Ryans' cement block at Bridges corner by
allowing sixteen and one-half feet for the alley.''

Buildings and fences were erected upon the lots many
years ago, one house as early as 1851, and another fourteen
or fifteen years before the trial, and the porches to which we

have referred were either built or remodeled upon practically the same foundations many years ago. When the fences were built, they corresponded with those in the block immediately north of block 22, and every one thought they were on the true line, down to about the year 1905, when the town employed the surveyor. Thereafter a controversy arose, and a committee was appointed by the town council to confer with Bridges. This committee could not agree among themselves, but Bridges understood that he was to construct a sidewalk at a given place, and, acting upon that assumption, he laid a sidewalk at the place indicated, which is the one which defendant town gave him notice to remove. We are constrained to hold that defendant has not produced sufficient testimony to show that the fences erected at what was supposed to be the street line of plaintiffs' lots were not, and are not, upon the true line. The surveyor who made the survey for the town did not start at any known monument or corner, and it is no better than, if as good as, that run many years before by the old county surveyor. The original lines and monuments were all lost, and, in the absence of better testimony, the trial court was justified in taking the testimony of those who erected the improvements and built the fences when the true lines were fresher in the minds of the people, as worth as much, if not more than the unsworn statements of witnesses to the surveyor employed by the town, as to the location of lines, etc., upon which to find a starting point for his survey. In this respect the case is quite like *Corey v. City of Ft. Dodge,* 118 Iowa, 742.

II. Again, while an estoppel will not be found from the erection of fences or the planting of trees and shrubs alone, it may be established from the erection of sub-

4. SAME: estoppel.

stantial improvements by the owner of the lot with reference to a given line with the knowledge and acquiescence of the town. Here houses were built, porches erected, sidewalks laid, fences constructed, and general improvements made with reference to a given line which

corresponded with that on the block to the north, with the knowledge and acquiscence of the town and its officials, and to now remove them will not only render the premises unsightly, but, in fact, destroy part of the porches, leaving part of them in the street. The sidewalk would be upon the lots and inside the street line, and, as we understand it, the line contended for by the city would be crooked and out of joint with that in the block to the north. Such facts clearly make a case of estoppel under the authorities hitherto cited. Plaintiffs do not complain of the decree, and defendants' contention is without merit. The lines and corners were therefore properly established by the trial court, and its decree must be, and it is, *Affirmed.*