## MORROW *v.* WHITNEY.

1. When an act of Congress, confirming a claim to land, contains a proviso that the confirmation shall not include any lands occupied by the United States for military purposes, the fact of such occupancy can be established by parol evidence, and is not necessarily a matter of record.

2. Where such occupancy does not exist, the act perfects the title of the confirmee, if the tract has clearly defined boundaries or can be identified. The interest of the United States having been thereby vested in him, a patent subsequently issued to him is only documentary evidence of title.

3 *Langdeau* v. *Hanes*, 21 Wall. 521, cited and approved.

4 In a description of premises, distances and quantities, when inconsistent with metes and bounds, must yield to them.

ERROR to the Supreme Court of the State of Wisconsin.
This is an action of ejectment brought in the Brown County

Circuit Court, Wisconsin, by Whitney and Baker, for the possession of a tract of land, consisting of ninety-four acres and a fraction of an acre, situated in the borough of Fort Howard, in that county and State. On the trial, the plaintiffs deraigned title to the premises from one Pierre Grignon, to whom a patent of the United States was issued June 2, 1870. The defendant Morrow set up an adverse possession of the premises in himself, and parties through whom he derived his interest, for more than forty years, under a claim of title founded upon a written instrument as a conveyance of the premises. On the trial he relied upon a legislative confirmation of a claim under the act of Congress of Feb. 21, 1823, of one Alexis Gardapier, from whom he traced his title.

Judgment was rendered in favor of the plaintiffs, and, it having been affirmed by the Supreme Court of the State, Morrow sued out this writ of error. The additional facts are stated in the opinion of the court.

*Mr. Timothy O. Howe* for the plaintiff in error.
*Mr. Matt. H. Carpenter, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

The act of Feb. 21, 1823, 3 Stat. 724, after reviving and continuing in force certain previous acts for the adjustment of land claims in the Territory of Michigan, which then included Wisconsin, provided, in its fifth section, that every person who, on the 1st of July, 1812, was a resident at Green Bay, or at other places named, and had then occupied and cultivated a tract of land within either of those settlements, or had occupied a tract of land formerly cultivated by him, and had continued to submit to the authority of the United States, should be confirmed in the tract thus occupied and cultivated. The section did not in terms require the commissioners created under the previous acts, and continued in authority with reference to other claims, to report to Congress their action upon the new claims arising under this section; but we think it was the intention of Congress to place such claims on a similar footing with those to which the previous acts referred; and that with respect to them the commissioners should be invested with similar powers and be subject to similar duties. And upon that idea the com-

missioners acted.   They considered the claims presented under
the fifth section, and the evidence to bring the claims within
its provisions, and they reported the result of their labors to
the Secretary of the Treasury.   The report stated what claims
they had confirmed, and what claims they had rejected, with
the evidence upon which their decision was based.   Among
the claims considered and confirmed by them was one presented
by Alexis Gardapier, and one presented by Pierre Grignon.
The claim of Gardapier was to a certain tract situated on the
west bank of Fox River, at Green Bay, described " as being
a vacant strip lying between tract number one, confirmed to
Jacques Porlier, on the north, and tract number two, confirmed
to Louis Grignon, on the south, commencing at low-water mark
and running west eighty arpents, and in width three arpents
on the aforesaid river."   American State Papers, Public Lands,
vol. iv. p. 272.   The commissioners decided that the tract
claimed be confirmed to Gardapier, provided it did not interfere
with a previous confirmation.

The claim of Pierre Grignon was to a tract of land near Fort
Howard, on the west side of Fox River, at Green Bay, imme-
diately below the first creek that emptied into the river, being
about fifteen acres in front on the river, and extending back
indefinitely.   The commissioners decided that this claim be
confirmed, provided it did not interfere with the confirmation
previously made to Jacques Porlier, or with the one made by
them to Alexis Gardapier.   The commissioners gave their de-
cision upon both of these claims on the same day, Nov. 21,
1823.   Their report was presented to the Secretary of the
Treasury, and by him referred to Congress ; and, on the 17th
of April, 1828, Congress passed an act confirming the claims
" purporting to be confirmed, or recommended for confirmation,"
by the commissioners.   4 Stat. 260.   The act required the
Secretary of the Treasury to adopt such measures as might be
necessary to give full effect to the reports of the commissioners,
but with a proviso, among other things, that the confirmations
should not be so construed as to extend to any lands occupied
by the United States for military purposes.   The act, also,
made it the duty of the register of the land-office at Detroit to
issue to the claimants whose claims were confirmed patent cer-

tificates, upon which patents were to be granted by the Commissioner of the General Land-Office.

If the land claimed by Gardapier were not occupied at the time by the United States for military purposes, there was no impediment to the immediate operation of the act upon his title. Whether there was any evidence of such occupation we shall presently consider. Assuming now that there was no such occupation, the effect of the act was not doubtful. It recognized the validity of the claim of Gardapier, and operated to transfer to him the interest of the United States as effectually as a grant or quitclaim could have done. A confirmation is a conveyance of an estate or right in lands to one who has the possession or some estate therein. The tract confirmed appears to have had clearly defined boundaries, or to have been at least capable of identification; and, if such were the case, the confirmation perfected the claimant's title. A subsequent patent would only have served as documentary evidence of that title.

From the earliest period in the history of the country, claims to tracts of land, upon which persons have settled and made improvements in advance of the public surveys, and before the lands have been offered for sale, sometimes upon the express invitation of the public authorities, and sometimes upon their supposed acquiescence, have been presented for the equitable consideration of the government. Such claims in great numbers have arisen under other governments from which we have acquired territory, with treaty stipulations for their protection. Sometimes such claims have been submitted to boards of commissioners for approval or rejection; sometimes they have been referred to the judicial tribunals for determination, and sometimes they have been directly acted upon by Congress. In the settlement of these claims the law has generally provided that a patent of the United States should be issued to the claimant when his claim has been recognized as valid or entitled to confirmation. The patent in such cases, as we have recently had occasion to observe, operates in two ways. "It is a conveyance by the government, when the government has any interest to convey; but where it is issued upon the confirmation of a claim of a previously existing title, it is documentary evidence, having the dignity of a record, of the existence of that title or of such

equities respecting the claim as justify its recognition and confirmation. The instrument is not the less efficacious as evidence of previously existing rights because it also embodies words of release or transfer from the government." *Langdeau* v. *Hanes*, 21 Wall. 521.

In this case, the patent would have been of great value to the claimant. It would have enabled him, without other proof, to maintain his title in the tribunals of the country. Founded as it would have been upon a survey by the government, it would have removed the doubt as to the boundaries of the tract, which always arises where their establishment rests in the uncertain recollection of witnesses as to an ancient possession. It would thus have proved to its possessor an instrument of quiet and security, but it would not have added any thing to the interest vested by the confirmation. *Ryan et al.* v. *Carter et al.,* 93 U. S. 78.

If, then, there was no military occupation of the premises when the confirmatory act passed, as we have thus far assumed, the title of Gardapier became perfect by force of the confirmation. His claim, in our judgment, embraced the entire tract lying between tract number one, confirmed to Jacques Porlier, on the north, and tract number two, confirmed to Louis Grignon, on the south, commencing on the river and running back eighty arpents. If there were a mistake, as alleged, in the statement of the distance the tract extended along the river, it was one which must yield to the clearly designated northern and southern boundaries. Metes and bounds in the description of premises control distances and quantities when there is any inconsistency between them. This is a familiar rule, and is founded upon the principle that those particulars are to be regarded in which error is least likely to occur. Gardapier might easily have been mistaken as to the length of his frontage on the river; but he could not well have been mistaken as to the land bordering on each side of his small tract, or as to whom it was confirmed. His tract was sufficiently identified by the boundaries named; and in such cases it is immaterial if a false or mistaken-circumstance be added to the description.

The question, therefore, which was vital to the case, was whether the land claimed by Gardapier was occupied for mili-

tary purposes on the passage of the confirmatory act. There is no evidence in the record that there was at that time any such occupation, and the record purports to state all the testimony given. It was nearly a year after the confirmation before the general of the army recommended, and the President ordered, the reservation for military purposes of a tract which embraced within its limits the land claimed by Gardapier. It was then too late to affect his title. It is true the recommendation of the commanding general was accompanied with a description of the land ordered to be reserved, and a statement that the land had been previously occupied for military purposes; but that statement does not mention when such occupation commenced, or how long it existed. The statement could only be evidence of the representation upon which the President acted; it was not competent evidence of any other fact. And the order of the President, effectual to create the reservation if the land had continued the property of the United States, was of course inoperative if the title had passed to Gardapier.

The military occupation was a fact to be established by parol proof; it was not a matter of record, like the order of the President directing the reservation, to be shown by the production of a copy. And the defendants offered in various forms to prove, by witnesses produced for that purpose, that the tract was not thus occupied on the passage of the act of Congress, and had not been thus occupied previous to that date. They also offered to prove that from the year 1824 down to the commencement of this action, a period of nearly forty-nine years, the land had been in the actual, open, notorious, and exclusive possession of Gardapier and parties claiming under him, and that during this time it had been fenced, cultivated, improved, and built upon without interruption, objection, or dispute on the part of any one. But the court refused to admit the proof, and also refused an instruction to the jury asked by the defendants, that in order to find a verdict for the plaintiff they must be satisfied from the evidence that the land in controversy was occupied by the United States for military purposes on April 17, 1828, or was reserved for military purposes at that time, or was treated by the government as thus reserved.

So far as the proof offered related to the occupation at the

passage of the confirmatory act and previously, it was compe-
tent and should have been received, and the instruction asked
for was proper and should have been given.   The refusal of
the court to receive the proof, and also to give the instruction,
was error, for which the judgment must be reversed and a new
trial had.   The proof as to subsequent possession was immate-
rial, if military occupation existed at that date.   If such occupa
tion then existed, the confirmation did not apply to the land,
and it continued as before the property of the United States.
Occupation of the public lands can never be adverse to the
government so as to defeat or affect in any way the title
subsequently conferred by its grant or patent.   In such cases,
the doctrine declared in *Gibson* v. *Choteau*, 13 Wall. 92, ap-
plies.

.. *Judgment reversed, and cause remanded with direction to
order a new trial.*