F. A. TOMLINSON, Appellee, v. J. R. GOLDEN and MRS. J. R. GOLDEN, Appellants.

**Boundaries:** KNOWN MONUMENTS: FIELD NOTES: CONFLICT. The actual survey upon the ground, as ascertained by monuments then made to mark the boundaries of lots and blocks, will control over the paper plat and field notes of the survey. Thus where stakes were set in making the original survey of a tract, to mark the lots, blocks and streets, and were subsequently ascertainable and were recognized by lot owners in building, and by the public in the improvement of the abutting street, the stakes thus set were controlling over a subsequent survey made from the original field notes, but which did not correspond with the original markings.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

SATURDAY, NOVEMBER 16, 1912.

THIS is a controversy between adjoining lot owners over the location of their dividing line. The plaintiff brought this action to enjoin interference with his fence. There was a decree for the plaintiff establishing the line as claimed by him. The defendants appeal.—*Affirmed.*

*Ryan & Ryan,* for appellants.

*S. G. Van Auken* and *Bowen & Alberson,* for appellee.

EVANS, J.—Reference to the following plat will aid to an understanding of the case.

This is a plat of an addition to Des Moines known as Kauffman Place. The plaintiff is the owner of the north half of lot 22, and the defendants are the owners of the south half thereof. This lot faces east on

Thirty-Sixth street. Thirty-Sixth street runs north and south. What appears as "A" street in the plat is referred to as Thirty-Seventh street in this record. From the southeast corner of lot 22 to the northeast corner of lot 14 is a distance of six hundred feet according to the plat, and according to the ground. This dimension also measures the distance between University avenue and Cottage Grove avenue as laid by the recorded plat. It is undisputed that lot 22, as platted, has a dimension of one hundred feet fronting east on Thirty-Sixth street, and that the parties hereto are entitled each to fifty feet thereof. The controversy is over the true location upon the ground of the north and south lines of such lot. Practically all the lots shown on the plat as fronting east on Thirty-Sixth street and numbered from 14 to 22, inclusive, are improved and occu-

NORTH

| | UNIVERSITY | | AVE. | | |
|---|---|---|---|---|---|

A plat map showing lots: Along University Ave at top. Column with lots 33, 34, 35, 36, 37 (street "A"/WEST side), 38, 39, with widths 149.7, 151. Lots 32, 31, 30, 29, 28, 27, 26, 25, 24, 23 (148). Lots 14, 15, 16, 17, 18, 19, 20, 21, 22 (148) fronting on 36 TH ST. Lots 13, 12, 11, 10, 9, 8, 7 (148). Lots 1, 2, 3, 4, 5, 6 (148) on 35 TH ST, EAST side. Cottage Gr. Ave at bottom, SOUTH.

pied as residence properties. In locating and taking possession of their lots, the respective owners were guided by the presence of certain stakes which were supposed to represent the respective corners as fixed upon the ground by the

original survey. These stakes were all consistent with each other; and the respective owners successively took possession in accord therewith, and each owner is in possession of his appropriate dimensions indicated upon the plat. The improvement and occupancy of these lots began about 1905. At that time neither Cottage Grove avenue nor University avenue nor Thirty-Sixth street had been improved. The original survey of that ground was made in 1902 by one Dickenson. This survey, however, laid open only six lots on this ground, giving to each a frontage of one hundred feet east on Thirty-Sixth street, and stakes were then set by the engineer one hundred feet apart, to indicate the boundaries of each of such lots. Such plat was not recorded in such form. Just when the plat was made in the above form does not appear. This later plat was filed and recorded in 1906, and after sales had been made therefrom. In April, 1907, the plaintiff purchased the north half of lot 22. He took possession in accordance with the stakes appearing upon the ground, and such possession was consistent with the claims of his neighbor on the north. The defendants also purchased in 1907 a few days prior to the purchase of the plaintiff. They also took possession of fifty feet south of plaintiff's assumed line. In the spring of 1909, after all the improvements above referred to had been made, except those of the defendants, a resurvey or measurement was had in pursuance of the call of the field notes of the original survey, and stakes were set in pursuance of this survey. The result of this survey was to disclose a discrepancy of approximately four feet between the call of the field notes and the stakes and lines which had been assumed and adopted by the respective owners. Under the call of the field notes every occupant was encroaching upon his neighbor to the south to the extent of approximately four feet, and was himself encroached upon in like manner by his neighbor on his north.

In pursuance of this survey, the defendants claimed

a four-foot strip of ground occupied by the plaintiff. It will be seen, therefore, that the controversy involves a possible readjustment of all the partition lines in the block.

The stakes which have been referred to were pointed out to plaintiff as the monuments fixing the boundaries of his proposed purchase, and he accepted them as such. If these stakes, or either of them, represented the monuments erected as a part of the original survey, then we have a case of conflict and discrepancy between the monuments upon the ground, on the one hand, and the field notes and plat as recorded, on the other. In such a case the law seems to be well settled that the survey upon the ground as ascertained by monuments then made to mark the boundaries of the lots is controlling, and the paper plat and field notes must give way thereto. *Root v. Town of Cincinnati,* 87 Iowa, 204; *Bradstreet v. Dunn,* 65 Iowa, 248; *Ufford v. Wilkins,* 33 Iowa, 110; *McDaniels v. Mace,* 47 Iowa, 510. To the same effect see *Olson v. City of Seattle,* 30 Wash. 687 (71 Pac. 201); *O'Farrel v. Harney,* 51 Cal. 125; *Holst v. Streitz,* 16 Neb. 249 (20 N. W. 308); *Flynn v. Glenny,* 51 Mich. 580 (17 N. W. 65); *Marsh v. Mitchell,* 25 Wis. 706; *Turnbull v. Schroeder,* 29 Minn. 49 (11 N. W. 147); *Burke v. McCowen,* 115 Cal. 481 (47 Pac. 367); *Morrow v. Whitney,* 95 U. S. 551 (24 L. Ed. 456).

The defendants do not controvert the legal propositions here involved. Their main contention is that the evidence fails to identify the stakes in question as being the monuments made upon the ground at the original survey. The case here is therefore made to turn upon this question of fact. The trial court held the evidence sufficient in that regard. From a careful reading of the evidence we also reach the conclusion that the identity was sufficiently proved. It is true that there is no specific identification by any witness who saw the stakes at the time of the original survey. But it is not legally necessary that the proof of the identity should be in that form. It is undisputed that the engineer

Dickenson made the original survey upon the ground by setting stakes one hundred feet apart to indicate the boundaries of six one hundred-foot lots. In each case, the dividing line was to run due west from such indicated point, and parallel with the avenues. Dickenson also made the resurvey in 1909 from his original field notes, and thereby disclosed the discrepancy if discrepancy there was. He then saw the stakes upon which plaintiff and others relied. As a witness he would neither affirm nor deny whether such stakes were those that were set by him in 1902. If they were, they were not located where he intended to place them. In other words, they were not located in accordance with his field notes. In placing the stakes originally he intended to place them in accord with the notes and paper plat. If, in fact, he placed them otherwise, it was a mistake on his part. Of necessity he could not know that he made this mistake; otherwise he would not have made it. The fact, therefore, that the plaintiff failed to show the identity of the stakes, or the occurrence of a mistake by the testimony of this witness, is not very significant. This remark is not intended to reflect upon the witness. On the contrary, his testimony impresses us as entirely candid. One of the earliest persons to buy and improve in this locality was the witness Townsend. This was in 1905, and before the improvement of Thirty-Sixth street or either avenue. He then intended to buy upon the west side of Thirty-Sixth street. He looked at every lot on that side of the street, and ascertained its supposed boundaries. At the supposed southeast corner of lot 22 he found a stake, and a succession of stakes one hundred feet apart from there to University avenue. Due east from each one of these stakes on the east side of Thirty-Sixth street was a corresponding stake marking the boundaries on that side. He later bought a lot on the east side of the street and has occupied it ever since. He has been familiar ever since with the location of the stakes which he discovered in 1905. From 1905

down to the present time, the evidence of identity is abundant. The stakes and locations relied upon by plaintiff and others are the same as those ascertained by Townsend. They are located due west of similar stakes one hundred feet apart on the east side of Thirty-Sixth street. The fact that other stakes are found also which indicate smaller subdivisions of the original lots does not affect the question. Their location was determined by mere measurement from the original one hundred-foot points. These stakes were universally accepted by all parties in interest as representing the original survey until the survey of 1909. The record discloses no apparent advantage to be gained by any one by a shifting of the location of these stakes. So far as appears, every owner is in possession of the appropriate dimensions indicated by the plat, and this includes the defendants who are in possession of a little more than fifty feet. Their contention at this point, however, is that their possession is an encroachment of four feet upon Cottage Grove avenue, and that they hold such possession by sufferance, and not by right. The evidence shows that the south stake ascertained by Townsend purporting to be the southeast corner of lot 22 was actually located at the southeast corner of defendants' present location. It does appear that Cottage Grove avenue at this point is only approximately sixty-two feet wide, whereas it is supposed to be, according to the plat, sixty-six feet wide. The defendants' sidewalk apparently encroaches upon the platted street, approximately four feet beyond the ordinance provision. But such sidewalk as actually laid is nevertheless in a straight line with its extensions east and west. It is a somewhat inexplicable peculiarity of the situation that the sidewalk between Thirty-Fifth and Thirty-Seventh streets encroaches upon the width of Cottage Grove avenue, and that such encroachment is the result of keeping such sidewalk in a *straight line with its extensions east and west.* In other words, east of Thirty-Fifth street and west of Thirty-Seventh street, Cottage Grove avenue is sixty-

six feet wide. The sidewalk is laid at such points one foot south of the lot line according to ordinance. Beginning, however, at any point in the sidewalk east of Thirty-Fifth street and extending the same west in a straight line, it encroaches upon the avenue as platted between Thirty-Fifth and Thirty-Seventh streets. The sidewalk as actually laid between Thirty-Sixth and Thirty-Seventh streets is laid in such straight line, and yet is five feet south of the lot line of 22 as claimed by defendants, or one foot south of such line as claimed by plaintiff. If the sidewalk were removed to its proper location as contended for by defendants, it would be four feet out of line with the sidewalk which is properly located east of Thirty-Fifth street and west of Thirty-Seventh. Such a change of location would give to Cottage Grove avenue its full width of sixty-six feet, but it would also throw its north boundary out of line for the two blocks mentioned. Cottage Grove avenue has been fully improved with paving, gutters, curb, and parking, and these improvements have been adapted to the encroachment, if such it is. If the monuments upon the ground are controlling as to the property owners, there is nothing in this record to indicate that they are not likewise controlling upon the city. In this view, the mistake or discrepancy, if any, has operated equitably upon all. It does not appear that any property owner has been deprived of any dimension or suffered in location. The sum of the whole trouble seems to be that there is a loss of width to Cottage Grove avenue, and a gain to University avenue.

We think the monuments or stakes upon the ground are sufficiently proved to have been a part of the original survey, and that they must accordingly control.

We reach the conclusion upon the whole case, therefore, that the decree of the trial court was right, and it is accordingly,—*Affirmed.*