DANIEL BRAUSE, Appellee, v. FAYETTE COUNTY, Defendant; OLAF HAUG, CELIA HAUG and CHRISTIAN MEYER, Defendants and Appellants.

Boundaries: LOCATION: EVIDENCE. In this action to determine a disputed boundary line the evidence is reviewed and held to show that a highway, as actually located, was on a line designated by the measurements and monuments made by the original surveyor, and was not on a midsection line between the lands of plaintiff and defendant, as called for by the field notes.

Same. Where a highway was located and established according to the actual stakes and monuments as fixed by the original survey, that location will govern where a dispute arises from a conflict between such monuments and the field notes.

*Appeal from Fayette District Court.*—HON. A. N. HOBSON, Judge.

'TUESDAY, MARCH 24, 1914.

PROCEEDING in equity for injunction to restrain defendants other than Fayette County from obstructing a highway. From a decree in favor of plaintiffs, and Fayette County on its cross-petition, the other defendants appeal.—*Reversed* and *Remanded.*

*Ainsworth & Hughes* and *D. D. Murphy,* for appellants.

*E. H. Estey* and *E. E. Hasner,* for appellee, Brause.

*W. C. Lewis,* for Fayette County, defendant and appellee.

WITHROW, J.—I. The plaintiff and the defendants Haug are the owners of real estate in Fayette county situated in the

N. E. ¼ of section 15 of township 94. Separating parts of their holdings is a public highway. The dispute between the parties is as to the true location of the highway, as upon that depends their respective east and west lines bordering on the highway. Fayette county was made a party defendant. It is the claim of the plaintiff that the highway was established forty feet in width on the line between the E. ½ and the W. ½ of the N. E. ¼ of section 15, and that the defendants, other than Fayette county, have so built their fences as to obstruct the highway, and especially damage the plaintiff's property lying west of the highway. He claims that when the road was commenced to be used it was not known definitely where the middle line of section 15 was located; west of the highway was timber land, and the fences erected as highway boundaries were cheap and irregular. It also is claimed: That in 1904 the then adjacent owners caused a survey to be made to determine the true line of the highway, which showed that defendant's fences encroached upon the highway for the greater part of its width; and it was orally agreed that fences would be built to conform to the line as thus determined. That another survey was made in 1910 for a like purpose, with the agreement that fences should be placed upon the line so found; and the survey of 1910 confirmed that which was made in 1907. That acting upon said agreement and survey the plaintiff and his immediate grantors did make a new fence to conform to the lines so run, but the defendants refused to carry out their agreement. An estoppel is pleaded against the defendants. An injunction was asked restraining the defendants from interfering with plaintiff's right to maintain his fence at the place claimed by him as the true line. The defendants Haug and Meyer claim that, when the property now owned by Haug was purchased by his grantor, Meyer, it was inclosed by fences, that along the line of the highway in dispute being pointed out as the west boundary, and that it was so occupied and used from the time of his purchase in 1892 down to the conveyance by him to Celia Haug in 1911,

and since that time by her; that the line thus pointed out had for a period of more than twenty-five years been continuously acquiesced in by the owners of the land to the west. By cross-petition Fayette county pleads the establishment of the highway in question that it was so established on the line between the E. ½ and the W. ½ of the N. E. ¼ of section 15, and that defendants Haug and Meyer now obstruct the same by their fences. It asked the establishing of the highway on the midsection line and for removal of the defendant's fences. The answer of the defendants to the cross-petition avers that the road in dispute which is designated as Smith's relocation No. 478 of the Frisbie road No. 391 was actually and practically located and opened where the same is now located, and that the same has ever since been so located and traveled, and that it was and is on the survey of the road made at the time of its opening. The trial court found that the road had been established on the midsection line as claimed by the plaintiff, that the defendants Haug were obstructing it, and permanently enjoined them from further so doing. From this decree the defendants Olaf Haug, Celia Haug, and Christian Meyer appeal.

II. The real question presented is: What is the true and controlling location of the highway?

Frisbie road, No. 391, was established by the board of supervisors of Fayette county in 1877, in accordance with plat and field notes which were made a part of the permanent records of the county. In 1882 the board established Smith's relocation of a part of the Frisbie road; the new location being a

1. BOUNDARIES: location: evidence.

southerly continuation of the Frisbie road from a point where it had by angle turned to the east. The field notes of the original Frisbie road stated that upon reaching an angle post, which was definitely given as at a point indicated by given measurement, it from thence ran north on a division line of the N. E. ¼ of section 15 and the S. E. ¼ of section 10. The field notes for the Smith relocation ran a line to the west

until reaching the midsection line between the S. E. ¼, N. E. ¼, and the S. W. ¼, N. E. ¼ from "red oak twelve inches" bears north to an angle post marking the line in the old Frisbie road. Following such actions fences were build by adjoining owners, that on the west side being of wire, in places fastened to trees, it being through a wooded section; and, as appears from the evidence, the fences as then built, continuously from that time marked the respective east and west lines of the highway, there being no question or dispute concerning them until at or near the time of recent surveys made by adjoining proprietors to determine their property lines. It may also be fairly concluded from the evidence that the highway as thus visibly marked and used did not accurately follow the midsection line; as to this there is no substantial dispute, but whether it in fact was in accordance with monuments fixed or recognized in marking the surveys is the subject of sharp controversy.

The surveyor who at the request of owners ran the lines in 1910 stated that he did not find the center of section 15 marked by any permanent or recognized monument, and that point was determined by him by running lines from other monuments. He stated that it was obvious that the middle of the road as traveled did not coincide with the line which he ran; that it corresponded with his survey for a distance of about 20 chains from the north line of the section, and then deflected to the west, and this variance is the producing cause of that which is the subject of controversy.

The preceding survey of 1904, also made at the instance of owners of land in section 15, was made by one Belknap, who was at the time county surveyor, and he also was present when the survey of 1910 was made. He testified that he did not attempt to locate the witness trees designated in the field notes of the road survey, but that such attempt was made in the survey of 1910. He also testified that a tree was found that "was possibly a witness tree to that point if one used the center line of the road as then traveled. The location of

this tree would correspond to the location of the witness tree given in the field notes of the road, and, if this tree was used as a witness tree for that survey, the center of the line of the highway would be about with the center line as then fenced and traveled, and would be west of the center line of the N. E. ¼ of section 15.'' He also testified that on this tree there was a blaze, or a scar caused by a blaze, made at some previous time, indicating that it was a witness tree; that they chopped into the tree and discovered the old blaze, and there located the tree from the field notes of the road.

Mr. Simonson, who made the survey of 1910, testified that he saw a tree which he thought to be a witness in connection with the road survey, drawing his impression from the field notes and the character of the tree.

This evidence when taken in connection with the clearly established fact that the road as fenced and used for more than a quarter of a century, was on a line in harmony with it, when taken as a witness tree, and that its location was by measurements based upon the early road survey found to be at the place where a witness tree was then located, we think clearly shows that the road as actually fenced and recognized was on the line designated by the measurements and monuments of the surveyor; but was not, at the place in dispute, along the midsection line, although it followed that line through the N. ½ of the section.

III. We first inquire as to what is the true location of the highway. As applied to streets, this court held in *Tomlinson v. Golden,* 157 Iowa, 237, that where

2. SAME.

stakes were fixed as monuments in the original survey, and a conflict existed between such monuments and the field notes and plat as recorded, the survey upon the ground as ascertained by the monuments is controlling. In *Bridges v. Town of Grandview,* 158 Iowa, 402, in which arose the question of rights when the original boundaries or monuments had been lost, the rule was recognized that under such conditions the court was justified

in acting upon the testimony of those who built fences and erected improvements when the true lines were known or fresh in the minds of those who built and improved with reference to them. While that case does not wholly apply to the questions we now consider, for in this instance there is evidence as to one monument based upon which the original fence lines were properly placed, yet it gives proper weight to what had been done by adjacent owners with reference to established lines and monuments, and to that extent has strong application here. *Klinkefus v. Vanmeter,* 122 Iowa, 412, a case involving a dispute between property owners whose lands were separated by an intervening highway, recognizes, although does not directly decide, that the visible monuments will control as against recorded plats and field notes. These cases are clearly distinguishable from *State v. Welpton,* 34 Iowa, 145; *Grube v. Wells,* 34 Iowa, 148; *State v. Gould,* 40 Iowa, 372, and other cases presenting like questions, in that they involved the rights of adjacent owners with reference to the true line; no question arising as to the relative importance of a recorded plat and discoverable monuments. We conclude that under the facts it must be determined that the highway as originally laid out, fenced, and continuously used was the practical location of the road, and as such would control as against subsequent surveys which, when applied to the recorded plat in its recitation of the midsection line, would fix a line different from that actually laid out. The rule thus stated also has recognition in *Quinn v. Baage,* 138 Iowa, 437.

So finding, it follows that the rule as to rights acquired by acquiescence has no necessary application to the case, as the fences maintained by the respective owners and their grantors were as originally located and did not constitute an invasion of a private right.

We therefore reach the conclusion that the appellee had not the right to have the highway recognized and established at the place in dispute upon what the later surveyors found to

be the middle line dividing the N. E. ¼ of section 15; that the defendants, appellants, are entitled to a decree holding them not to have been trespassers, or to have obstructed the highway; and that the injunction should be dissolved.

The cause is remanded for a decree in conformity with this opinion.—*Reversed* and *Remanded.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concurring.