JOHN PINE, Appellant, v. FRED REYNOLDS et al., Appellees.

**HIGHWAYS:** Boundary Lines—Location of Fences. Evidence
1  reviewed, in a suit by a landowner to restrain the removal of
his fence from its location in the public highway, and held
sufficient to show that the fence was not on the true line, and
was not located in conformity with the highway, as shown
in field notes of the survey on which it was originally estab-
lished.

**HIGHWAYS:** Boundary Lines—Evidence. In the absence of evi-
2  dence from which it may be inferred that a fence along a high-
way was located in accordance with the actual and practical
location, the plat and field notes of the establishment and loca-
tion will control.

**FENCES:** Location in Highway—Adverse Possession. Where a
3  fence is located in the highway, and not on the correct line,
the owner of such fence cannot acquire any right to its main-
tenance by adverse possession.

*Appeal from Audubon District Court.*—J. B. ROCKAFELLOW,
Judge.

OCTOBER 17, 1919.

SUIT in equity, to enjoin the defendant township of-
ficers from the threatened removal of plaintiff's fence from
its present location in the public highway. There was a
decree in the court below, dismissing plaintiff's petition.
Plaintiff appeals.—*Affirmed.*

*Mantz & White,* for appellant.

*T. M. Rasmussen,* County Attorney, and *Graham &
Graham,* for appellees.

STEVENS, J.—Plaintiff is the owner of the southeast
quarter of Section 34, Greeley Township, which lies im-
mediately north of Section 5 in Audubon Township, Audu-
bon County. The two tracts are separated by a public

highway, the line between them is a correction line, and the tract south thereof is divided into lots. The defendants are the clerk and trustees of Greeley Township, and plaintiff seeks in this suit to enjoin them from moving the fence on the north 'side of said highway to a line located by the county engineer a short distance north of its present location. The highway in question was established in September, 1873. The original government field notes and also the field notes of the original survey of the highway were offered in evidence, but it is claimed by counsel for appellant that the latter are incorrect.

The controversy results from a dispute as to the true location of the southeast corner of Section 34. One Wattles, who, at the time, was county surveyor of Audubon County, made a survey between Section 34 in Greeley Township and Section 5 in Audubon Township in 1881, but found no stone or monument marking the southeast corner of Section 34. He, however, established a corner, marking the same with a stone. His field notes were duly made of record. Some years later, another surveyor undertook to locate this corner, and fixed same at a point 28.5 feet north of the stone set by Wattles. The northwest corner of Section 5, as established by the government survey, which is 1,350.6 feet east of the southeast corner of Section 34, is not in dispute. The northwest corner of Section 5 was determined and established by a commissioner appointed by the district court, about 15 years before the present controversy arose. The evidence discloses that stones were found in the highway between the northwest and northeast corners of Section 5, but at least 20 feet south of a line drawn between the two corners. They are also out of line with the Wattles stone at the southeast corner of Section 34, which is south of the correction line.

Plaintiff's fence, according to the monuments at the northwest and northeast corners of Section 5, is, at the

south end, about 28 feet in the highway, and at a place some distance west, about 5 feet. The stone at the northwest corner of Section 5 has been lowered two or three times, and a witness, who was present at the time, testified to the manner of lowering the same; and it appears from this testimony that the stone was not moved from the point where it was originally located by the government surveyors. All of the witnesses testifying upon that point agree that plaintiff's fence on the north side of the highway is irregular, and that the east end is several feet farther south than the west end or than the center.

If the monument marking the northwest corner of Section 5 and the corner established by the commissioner appointed by the court at the northeast corner thereof represent the true government corners, then all of the testimony shows that the southeast corner of Section 34, as established by Wattles, is at least 28 feet south of the government corner. As before stated, the line between Sections 34 and 5 is a correction line, and should be straight. Correction lines are first laid out, and other lines are run with reference thereto.

The evidence does not disclose when the highway in question was first opened for travel, nor does it appear whether there was a fence between Sections 5 and 34 at the time of its location. There is no direct evidence that plaintiff's fence was placed upon a line designated or fixed by the highway authorities, and it was not located in accordance with the field notes of the road as established. One witness testified that he had seen the stone, placed by the government surveyors, at the southeast corner of Section 34, and that it was afterwards washed away. There is a small creek near the point where it is claimed this stone was located. The witness at the time he claims the stone

1. HIGHWAYS: boundary lines: location of fences.

was washed away, was quite young, and it was a good many years ago.

A row of willows was set out by the owner of Lot 2 in Section 5 in the early eighties, and many of the trees are still standing. The evidence does not, however, show that they were set out upon a line located or fixed at the time the road was established and opened; but presumably, from the evidence, they were intended to be placed approximately on the line, as its location was understood by the owner. Plaintiff's fence has been maintained at its present location for at least 30 years.

It is the claim of counsel for appellant that the evidence quite conclusively shows that the highway in question was, in fact, opened and the fences erected on the lines laid out and established by the proper authorities, and that, in point of fact, the highway, as opened and used for more than 40 years, is the highway actually located and opened by the public, and that it is immaterial whether the location thereof is in conformity to the recorded plat or field notes of the surveyor locating the same. To sustain this contention, they cite and rely upon *Brause v. Fayette County,* 164 Iowa 606; *Tomlinson v. Golden,* 157 Iowa 237; *Bridges v. Incorporated Town of Grand View,* 158 Iowa 402; *Klinkefus v. Vanmeter,* 122 Iowa 412; *Buch v. Flanders,* 119 Iowa 164; *Kerker v. Bettendorf M. Wheel Co.,* 140 Iowa 209, 210; and other cases.

In *Brause v. Fayette County,* supra, which is most closely analogous in its facts with the case at bar, the court held that the fences enclosing the highway in controversy were placed on a line designated by the measurements and monuments of the surveyor at the time of fencing, and that same had been continuously used as originally opened for travel, and was, therefore, the practical and actual location of the highway, and that same would control as against long subsequent surveys which showed that it

was not located in accordance with the recorded plat and field notes of the established highway.

The evidence in the case at bar fails to show that the highway was originally opened and fences built in accordance with stakes, monuments, or lines located by the county surveyor or the county authorities. It does not appear from the record that the land in Sections 34 and 5 was fenced at the time of the establishment of the highway, nor is there anything showing how the plaintiff's fence came to be where it now stands. The Wattles monument was placed at the southeast corner of Section 34 long after the establishment and actual opening of the highway. Of course, a landowner planting trees adjacent to a highway would quite naturally endeavor to get same approximately on the line, but the trees on the north end of Lot 2 in Section 5 were not planted until several years after the highway was opened, and the fence on the south side of the highway was moved several feet north of the row of trees about 16 years before the commencement of this suit. The court cannot presume, from the location of the fences and trees alone, that same were placed in accordance with monuments, or on lines designated by the highway authorities, at the time the highway was located and opened for public use. The overwhelming weight of the evidence leaves no doubt that plaintiff's fence is not on the true line; and, in the absence of evidence from which it may be inferred 2. HIGHWAYS: that the same was erected in accordance boundary lines: evidence. with the actual and practical location of the highway, the plat and field notes of the establishment and location thereof should control. The line on which defendants seek to locate plaintiff's fence is substantially in conformity with the line on which the highway was originally established by the board of supervisors, as shown by the original field notes. It is true there are some

inaccuracies in these field notes, but they are of minor importance.

The facts bring the case within our holding in *Quinn v. Baage*, 138 Iowa 426, and *Bidwell v. Cuen*, 183 Iowa 633, which follows *Quinn v. Baage* and numerous other decisions of this court. In the former of the above cases, the court, referring to the question of adverse possession and acquiescence, said:

3. FENCES: location in highway: adverse possession.

"But where the road has been established and continually used, the mere fact that the fences bordering it are not on the true line, and the portion beyond has been occupied by the landowner up to the fence, and not made use of by the public, will not work an estoppel against the public; but the entire width of the highway may be appropriated by the public whenever required for the purposes of travel. * * * Manifestly, the doctrine of acquiescence can have no application to the fixing of a boundary between the abutting owner and the highway; for no one representing the public is authorized to enter into an agreement upon or to acquiesce in any particular location. The fee to the streets is in the town or city, but always in trust for the public. The municipality can neither sell nor convey nor authorize their use for private uses. It has no authority with reference thereto, save as conferred by the statute. *Stanley v. City of Davenport*, 54 Iowa 463. The same doctrine has been held to apply to highways in the country. *Dickinson County v. Fouse*, 112 Iowa 21. It was there noted that the easement does not vest in the people of the county, but the public generally; and that, while the board of supervisors may establish, maintain, or discontinue, and township officers may keep in repair, yet nothing goes with these powers, not expressed or implied as essential for their performance. The doctrine of acquiescence is founded on the presumption of an agreement fixing the division line

from long maintenance of a fence or other monument marking a line as a boundary between the adjoining owners, and this is of such strength that, after the lapse of ten years, in the interest of peace and quiet, they are not permitted to gainsay the agreement thus inferred. In other words, having adopted a line as a boundary between them by unmistakable acts, they are not permitted to deny the agreement to be implied therefrom. *Miller v. Mills County,* 111 Iowa 654."

Plaintiff had not, therefore, acquired a right to maintain his fence in the highway, either by adverse possession or by the consent or implied agreement of the public; and there is no theory upon which the doctrine of estoppel may be applied. It follows that, for the reasons indicated, the decree and judgment of the court below is right, and therefore is—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.