THEODORE LANGLE et al., Appellees, v. PAUL BRAUCH, Appellant, et al., Appellee.

**BOUNDARIES: Presumption of Straight Line.** The line between two
1  abutting sections will be conclusively presumed to be a straight line
connecting the two section corners, unless clear and satisfactory
evidence is produced of the existence at the quarter corner of governmental monuments to the left or right of such straight line.

**BOUNDARIES: Acquiescence—Acquiescence by Public.** The public
2  may not, by long use, be held to acquiesce in the erroneous location
of a highway.

**HIGHWAYS: Erroneous Location—Estoppel.** The long continued existence of fences along a public highway will not estop the public
3  from insisting on the correct location of the highway.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

NOVEMBER 15, 1921.

REHEARING DENIED FEBRUARY 17, 1922.

ACTION by township trustees, to enjoin defendant from obstructing a certain highway. The adjoining landowner was impleaded. A decree of injunction was granted as prayed, and defendant appeals.—*Affirmed.*

*Nelson Miller* and *T. M. Zink*, for appellant.

*E. T. Bedell* and *Roseberry & Roseberry*, for appellees.

FAVILLE, J.—This case involves the question of the true location of the section line between Sections 1 and 2 in America Township, Plymouth County. Appellant is the owner of lands
1. BOUNDARIES: in said Section 2 abutting upon the west side
presumption of of the highway, and of 63 acres in the northwest
straight line. quarter of Section 1, east of the highway. The remaining portion of the land in Section 1 east of the highway is owned by one Ernsterhoff. The government survey of Sec-

tions 1 and 2 was made in 1854. On December 10, 1873, by proper proceedings, a public highway was duly established, 66 feet in width, and extending north and south on the section line between said Sections 1 and 2, the said section line being the center of the said highway as so established. The appellant's father acquired in 1877 the premises now owned by the appellant, and appellant acquired his title from his father. The adjacent landowner, Ernsterhoff, also acquired his title from his father, who purchased the quarter in Section 1 some years after appellant's father purchased the land in Section 2. At the time both the original owners acquired title to their respective tracts, the country was largely open prairie, and the travel went across the land without much regard to section lines or established highways. There were then few fences, and the land in question in Sections 1 and 2 was not inclosed. In course of time, the land was broken up, and fences were built. A roadway was left between Sections 1 and 2, which was 66 feet in width. The exact date of the erection of the fence on appellant's land along the line of this road is not certain and definite in the record, but it appears to have been built some time in the eighties, and the fence upon the opposite side of the highway appears also to have been maintained for approximately the same length of time. The undisputed evidence shows that the road, as so fenced off, was used as a public highway after the fences were erected. Some work was done on it, in the way of grading and the construction of ditches.

There is no dispute in the record with regard to the location of the north and south section corners between Sections 1 and 2. The whole controversy turns upon the question of the true location of the quarter corner, located half way between said two points. It is the contention of the appellees that the true section line between Sections 1 and 2 is a straight line. It is the contention of the appellant that the quarter corner, midway between the north and south section corner, is located about 32 feet east of a straight line between the said two points. The evidence discloses that the fences referred to and the roadway were located and have been maintained along the course contended for by the appellant. That is to say, the appellant's fence and the adjacent roadway at and near the quarter corner

are located approximately 32 feet east of a straight line between the two section corners.

This action is brought to restrain the appellant from maintaining his said fence at said place, near said quarter corner.

I. The first question in the case is whether or not the true section line between Sections 1 and 2 is a straight line. The field notes of the original government survey show that the said section line was run as a straight line. It is the contention of the appellant that the monuments established by the government surveyor at the time of the original survey did not establish the same as a straight line, but that the quarter corner was marked by a stone which was located approximately 32 feet east of a straight line, and at the point contended for by the appellant. There is evidence tending to show the location of such a monument, and also that it was found and relocated by a subsequent survey, some years later.

It is well established that the lines as actually run by the original government surveyor become the true boundary lines. If these lines can be ascertained and determined by means of monuments erected by the government surveyor, they will control; and courses, distances, measurements, plats, and field notes must all yield to such established monuments.

In *Rowell v. Weinemann,* 119 Iowa 256, we said:

"Hence everything yields to known monuments and boundaries established by the government surveyors."

See, also, *Ufford v. Wilkins,* 33 Iowa 110; *Sayers v. City of Lyons,* 10 Iowa 249; *Root v. Town of Cincinnati,* 87 Iowa 202; *Rollins v. Davidson,* 84 Iowa 237; *Brause v. Fayette County,* 164 Iowa 606; *Tomlinson v. Golden,* 157 Iowa 237; *Klinkefus v. Vanmeter,* 122 Iowa 412.

The evidence in this case shows that whatever monument was erected by the government surveyor as marking the quarter corner in question has been long since obliterated. There seems to be no dispute in the record as to the true location of the section corners in controversy. The field notes of the government surveyor do not indicate that a stone was placed at the quarter corner, nor do they indicate any variation from a straight line in the section line in question. It is the contention, however, of the appellant and his witnesses that there was such a stone

at the corner many years ago; that the same was located approximately 32 feet east of a straight line; and that the appellant's fence was erected to conform to said quarter corner.

As before stated, if the location of such a monument were established, it would prevail over the recitals of the field notes of the government surveyor.

We have examined the evidence in regard to this matter, and reach the conclusion that appellant has failed to establish, in the clear, convincing, and satisfactory manner required in a case of this kind, the existence and location of a stone marking the quarter corner at the spot contended for by him. It is apparent that it is exceedingly difficult for witnesses, after a lapse of more than 30 years, to fix definitely the spot where a stone was located on the then open prairie. True, it is contended that the fence on the appellant's farm was built with reference to such stone, and there is evidence of witnesses who claim to have seen such a stone and to know its location. On the other hand, there is testimony of other witnesses who frequented the premises at said time, to the effect that they never observed any such monument.

A careful reading of all the testimony fails to convince us that the appellant has proven the existence and location of a stone, as marking the quarter corner at the point contended for by him, by such convincing and satisfactory proof as is required in a case of this kind. If any such monument ever existed, it has long since disappeared, and its original location cannot be definitely established and fixed with such certainty as is required in cases of this kind. Under such circumstances, the rule is that the field notes of the government surveyor should be accepted as presumptively correct.

In *Pine v. Reynolds*, 187 Iowa 379, we said:

"The court cannot presume, from the location of the fences and trees alone, that same were placed in accordance with monuments, or on lines designated by the highway authorities, at the time the highway was located and opened for public use. The overwhelming weight of the evidence leaves no doubt that plaintiff's fence is not on the true line; and, in the absence of evidence from which it may be inferred that the same was erected in accordance with the actual and practical location

of the highway, the plat and field notes of the establishment and location thereof should control.''

See, also, *Resurrection Gold Min. Co. v. Fortune Gold Min. Co.*, 129 Fed. 668; *Hanson v. Township of Red Rock*, 4 S. D. 358 (57 N. W. 11); *State v. Ball*, 90 Neb. 307 (133 N. W. 412); *Taylor v. Fomby*, 116 Ala. 621 (22 So. 910); *Harris v. Harms*, (Neb.) 181 N. W. 158.

Applying these rules to the facts of the instant case, we hold that the appellant has failed to establish the existence and location of a monument marking the quarter corner as being at a point 32 feet east of a straight line between the two section corners, by that clear, convincing, and satisfactory proof required in cases of this kind. The monument being obliterated and lost, and its true location not being definitely fixed and established by witnesses, the presumption that the quarter corner was located on a straight line between the two section corners, as shown by the surveyor's notes, would obtain.

II. It is further contended by the appellant that, the road having been located upon the irregular line, as contended for by him, and having been used by the public for a long period of time, even if the same is not upon the true line, the said line has been acquiesced in, and cannot now be disputed.

2. BOUNDARIES: acquiescence: acquiescence by public.

In *Quinn v. Baage*, 138 Iowa 426, we said:

. ''Manifestly, the doctrine of acquiescence can have no application to the fixing of a boundary between the abutting owner and the highway; for no one representing the public is authorized to enter into an agreement upon or to acquiesce in any particular location.''

In *Bidwell v. McCuen*, 183 Iowa 633, we said:

''There has been no acquiescence in the line upon the part of the public, as claimed by counsel for appellant, for the manifest reason that no one representing the public was authorized to enter into an agreement upon, or acquiesce in, any particular location thereof.''

The doctrine of acquiescence is held not to apply to highway-boundary disputes in which a governmental agency is a party. *Sutton v. Mentzer*, 154 Iowa 1; *Quinn v. Baage*, supra; *Johnson v. City of Shenandoah*, 153 Iowa 493; *Chicago, R. I*

& P. R. Co. v. City of Council Bluffs, 109 Iowa 425; McClenehan v. Town of Jesup, 144 Iowa 352; Bridges v. Incorporated Town of Grand View, 158 Iowa 402; Kuehl v. Town of Bettendorf, 179 Iowa 1; Christopherson v. Incorporated Town of Forest City, 178 Iowa 893. Under these rules, there was no acquiescence by the county that now prevents it from asserting its right to the true line as the line of the highway.

III. It is urged that the county is estopped to claim the right to establish a highway upon the true line between the sections. In cases of this character, where the estoppel is based upon the erection of fences and the planting of shrubs and trees, we have held that no estoppel will lie against the municipality. *Bridges v. Incorporated Town of Grand View*, 158 Iowa 402.

3. HIGHWAYS: erroneous location: estoppel.

In *Bidwell v. McCuen*, supra, we said:

"Plaintiffs' claim to an estoppel is based upon the fact that they have planted some fruit and ornamental trees on said premises, and that a very small part of their barn extends over the line. The trees consist of two or three cherry trees and a soft maple. No such valuable improvements have been erected upon said disputed tract, or expense incurred in planting and cultivating fruit and ornamental trees, as to justify the court in applying an estoppel thereto. The portion of the barn extending over the line, according to the testimony of the county engineer, does not exceed a few inches, and will in no wise be interfered with by the public; while the fruit and ornamental trees are not of very great value. We therefore conclude that plaintiffs acquired no title to the premises in question by adverse possession, and that defendants were not estopped from causing the obstructions to be removed from said highway."

In *Kuehl v. Town of Bettendorf*, supra, we said:

"There is no estoppel on the part of the town; for the construction of a fence or the planting of trees is not such an improvement as will work an estoppel on the part of a town, even if it makes no complaint at the time the fences are built or the trees planted. This is held in many recent cases. See *Bridges v. Grand View*, supra; *Schultz v. Stringer*, 168 Iowa 668; *Biglow v. Ritter*, 131 Iowa 213; *McClenehan v. Jesup*, supra; *Burroughs v. City of Cherokee*, 134 Iowa 429."

We hold that the evidence of the existence of a monument marking the quarter corner at the place claimed by the appellant is not of such clear and satisfactory character, as to fix and determine the same as the true location of said corner; that, under such circumstances, the presumption of the correctness of the government field notes is not overcome; and that the true line between said Sections 1 and 2 is a straight line.

We also hold that the doctrine of acquiescence is not applicable to the case, and cannot be invoked as against the county or the officials acting for and in behalf of the public.

We also hold that, under the facts in this case, there was no proof of such facts and circumstances as would estop the county or the proper officials from insisting on the location of the road upon the true line between said sections.

The decree of the lower court enjoining the appellant from interfering with the public officials in the maintenance of said road 33 feet on each side of a straight line between said Sections 1 and 2 was correct, and the same is—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.