[Civ. No. 7537.   Third Dist.   Mar. 30, 1949.]

JOHN R. ARNOLD et al., Respondents, v. OSCAR HANSON et al., Appellants.

Morse & Richards for Appellants.

Lovett K. Fraser for Respondents.

ADAMS, P. J.—This is an appeal by defendants from a judgment quieting plaintiffs' title to Lots 19 and 20, Block 1,

of Clear Lake Highlands Club House addition in Lake County, which judgment also ordered defendants to restore to its original position the line fence between Lots 20 and 21, which fence had been constructed by plaintiffs and moved by defendants; and further awarded plaintiffs damages in the sum of $200 caused by the acts of defendants in cutting down plaintiffs' berry bushes and a tree, and moving the fence.

The controversy involves the location of the boundary line between Lots 20 and 21. In April, 1924, Clear Lake Highlands, Incorporated, owned a large tract of land on or near the shore of Clear Lake which it surveyed and subdivided into numerous lots and blocks. The survey was made by D. R. Morgan, a licensed surveyor, assisted by Carol Hale as transit man; and thereafter a plat of the survey showing lots, blocks and streets, which plat had been made by surveyor Morgan, was approved by the board of supervisors and filed for record July 25, 1924. The lots in question, namely, Lots 19, 20 and 21, face Hambaugh Avenue, sometimes called Lake Shore Drive, on the east, while the west ends of the lots are covered by the water of Clear Lake. As shown on the plat, Lots 4 to 26, inclusive, are 50 feet in width and rectangular in shape.

When the tract was surveyed into lots in April, 1924, wooden stakes were driven into the ground to mark their corners and side lines. In 1931, Carol Hale, with John T. LaBree who was or had been vice-president of Clear Lake Highlands, Incorporated, subdivider of the tract, and was then owner of Lots 19 and 20, located the original wooden stakes, most of which were still in place, and beside them drove into the ground three-quarter-inch iron pipe stakes about 30 inches long.

In 1937, Mr. LaBree and his wife contracted with plaintiffs for the purchase of Lots 19 and 20, and when the parties were negotiating for such sale Mr. LaBree showed the iron stakes to Mr. Arnold who accepted such stakes as marking the boundaries of the lots. They went into possession in 1937, built a house upon Lot 20, erected a fence along the south line for a distance of approximately 81 feet from Hambaugh Avenue, planted berry bushes and a tree near the fence, and later placed a stone wall along the remaining portion of the south boundary of the lot extending toward the lake. Plaintiffs completed the purchase and obtained a deed of conveyance in 1943.

In the spring of 1945, defendants acquired Lot 21, a 50-foot lot facing on Hambaugh Avenue and paralleling Lot 20 on the

south. In the same year they engaged a licensed surveyor, Hamlin A. Witham, to survey Lot 21. Mr. Witham concluded that the official plat (plaintiffs' Exhibit 1 in evidence) did not correctly match with monuments on the land, to wit, the iron pipes of which there is one at practically each corner, every 50 feet. He concluded that the bearing on the original plat was off, that the survey had been carelessly made, and that while the lots were staked as approximately shown by the original iron pipes on the front of the lots, the bearings on the original plat were erroneous. He admitted at the trial that his survey would disturb the side lines of lots in the tract numbered from 11 to 21, inclusive, and would have the effect of throwing the line between Lots 20 and 21 over onto Lot 20, and taking therefrom a triangular section 10.30 feet wide at a point 147 feet from Hambaugh Avenue, and 18.24 feet at the rear of the lot.

On receiving the report of surveyor Witham, defendants, without consultation with plaintiffs, took down plaintiffs' fence, removed the berry bushes and tree, and began the construction of a garage extending over into plaintiffs' Lot 20.

This action was thereupon brought by plaintiffs, and after trial by the court, without a jury, findings in favor of plaintiffs were filed and the judgment from which this appeal has been taken was entered.

We think that the judgment must be affirmed.

In *Kaiser* v. *Dalto,* 140 Cal. 167, 172 [73 P. 828], the court said that the survey as made in the field, and the lines as actually run on the surface of the earth at the time the blocks were surveyed and the plats filed must control; that the parties who own the property have a right to rely upon such lines and monuments, and that, when established, they control courses and distances. And in *Burke* v. *McCowen,* 115 Cal. 481, 486 [47 P. 367], it was held that where a survey as made and marked upon the ground conflicts with the plat, the survey must prevail. There *Whiting* v. *Gardner,* 80 Cal. 78 [22 P. 71], was cited, in which latter case it was said that in the absence of evidence to the contrary it will be presumed that the map correctly represents the survey, and the latter need not be looked to; but that if it be shown that a discrepancy exists between the map and the survey upon which it is based, the survey must prevail. A comparable case from Iowa is *Tomlinson* v. *Golden,* 157 Iowa 237 [138 N.W. 448], where it was held that where stakes were set in the ground to

indicate boundaries of the lots, and a purchaser found the stakes and relied thereon as monuments fixing the boundaries, as did others, such stakes must control though in a later survey the same surveyor found a discrepancy between the stakes and his field notes—that the field notes and paper plat must give way thereto. In support of its ruling that court cited, among other cases, *Burke* v. *McCowen, supra,* and *O'Farrel* v. *Harney,* 51 Cal. 125.

In accord are *Brauss* v. *Fayette County,* 164 Iowa 606 [146 N.W. 6], and *Langle* v. *Brauch,* 193 Iowa 140 [185 N.W. 28, 29]. In the latter case the court said: ''It is well established that the lines as actually run by the original government surveyor become the true boundary lines. If these lines can be ascertained and determined by reason of monuments erected by the government surveyor, they will control, and courses, distances, measurements, plats, and field notes must all yield to such established monuments.''

Appellants' surveyor testified that the official plat does not match the monuments on the land, that is, the iron stakes set in the ground. Under the foregoing authorities the monuments must prevail. This surveyor admitted that his survey would disturb the lines of all of the lots from 11 to 21, inclusive, many of which lots had already been sold. All of those lots are admittedly of the same width, and their side lines are parallel.

Furthermore, we are of the opinion that the trial court was not compelled to accept the testimony of appellants' surveyor as controlling on questions of fact which were involved, but was justified in accepting the monuments set by the original survey as correct. (*Lohman* v. *Lohman,* 29 Cal. 2d 144, 149 [173 P.2d 657].)

The only other question raised by appellants is that the judgment is so vague as to be unintelligible because it' does not describe plaintiffs' lots by metes and bounds so as to fix the division line between Lots 20 and 21—that it does not describe that line so that appellants will know where to replace the fence which they removed. The language used by this court in *Morris* v. *George,* 57 Cal.App.2d 665, 677 [135 P.2d 195], is applicable, to wit: that ''if appellants desired to have what they were required to do described with such meticulous particularity as their brief would indicate, they should have had a detailed survey and description of said ditch made before they destroyed it.'' Furthermore, the findings (finding IV) recite that defendants pulled up the iron pipe on the

south line of Lot 20, about 91 feet west of the street, and moved the fence over 5 feet 8 inches north from where the iron pipe was driven in the ground on the south line, 91 feet from the street. Also all of the lots numbered 11 to 21, inclusive, are 50 feet wide, and rectangular in shape, so appellants should have no difficulty in finding the original location of the fence and restoring it, as the judgment directs, "to its original position."

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.