WEBSTER COUNTY et al., Appellants, v. WASEM PLASTER COMPANY et al., Appellees.

**HIGHWAYS:** Obstructions—Injunction. Injunction will lie to restrain *interference* with the public officers in removing obstructions from the public highway.

1

**HIGHWAYS:** Correction of Erroneous Opening. The opening of a highway *partly* on the line as established, and *partly* to one side thereof, may be later corrected, irrespective of any theory of acquiescence by long user.

2

*Appeal from Webster District Court.*—E. M. McCALL, Judge.

NOVEMBER 15, 1919.

REHEARING DENIED APRIL 13, 1920.

SUIT in equity, to restrain the defendants from pre-

venting the agents and officers of plaintiff from removing obstructions from a highway. Decree dismissing plaintiff's petition, from which it appeals.—*Reversed.*

*E. E. Cavanaugh* and *Mitchell & Files*, for appellants.

*Helsell & Helsell*, for appellees.

STEVENS, J.—Plaintiffs allege in their petition that the defendant Adam Wasem is the owner of the northeast quarter, and the defendant Wasem Plaster Company of the southeast quarter, of Section 34, Township 89, Range 28, in Webster County; that, on or about November 29, 1876, a 66-foot highway was established by the board of supervisors on the section line between Sections 34 and 35; that a highway was opened, and that same has been in use for many years by the public; that, on May 15, 1913, the board of supervisors, acting under the authority of Chapter 1-A of Title VIII of the 1913 Supplement to the Code, selected and designated the highway in question as a county highway; that the fences of the defendants on the west side thereof extend into the highway, and at the south end are 2½ feet east of the section line; that, prior to the commencement of this suit, the county auditor caused written notice to be served upon the defendants, requesting the removal of said fences; that defendants failed and refused to remove the same, and threatened the county engineer and other agents of the county, who attempted to remove same, with violence, and by force prevented them from removing same. They ask that the defendants be permanently enjoined from in any way interfering with or preventing such officers or agents of plaintiff county from removing the obstruction from the highway.

1. HIGHWAYS: obstructions: injunction.

The defendants answered, denying generally the material allegations of plaintiff's petition, and setting up numer-

ous defenses; but the principal reliance of counsel may be summarized as follows:

(a) That no highway was ever legally established on the section line between Sections 34 and 35, as claimed by plaintiff; (b) that the defendant's fences have been maintained in their present location for more than 20 years; that the highway, prior to 1910, was open its full width of 66 feet, and that the evidence wholly fails to show that it was not opened on the section line, and therefore there is no proof that defendant's fences extend into or obstruct the highway; (c) that the said highway has been improved by grading, and kept in repair; that the tracks of the two railway companies extend across said highway; that crossings have been constructed over the same, and the highway graded with reference thereto; that all of said improvements have been made with reference to the fences as at present located; and that plaintiff is, by acquiescence therein, deprived of its right to demand that the highway, if not now so located, be opened upon the section line; and (d) that injunction is not the proper remedy.

The original petition, signed by Adam Wasem and others, and bond for the highway were offered in evidence, as was also the commission issued by the county auditor to Thomas Maher, to locate the highway, his report, plat, and field notes, report of appraisers, and the resolution of the board of supervisors, establishing the highway. The petition asked for the establishment of a highway "commencing at the northwest corner of Section No. Fourteen (14) Town. 89 N. of Range No. 28 West; thence south along west line of Sections No. 14–23–26–35 to intersect the Fort Dodge and Homer road or a road in that vicinity, answering the same purpose, and in substance the same." The report of the commissioner states that he distinguished the line of the road by proper marks, mounds, and stakes, as directed in his commission, and as shown on the plat and

by the field notes accompanying the same. The plat lo-cates a highway on the section line between Sections 34 and 35. The resolution of the board of supervisors recites that said road "be and the same is hereby declared established, according to the report of said commission, as shown by the plat and field notes accompanying and made a part of said report, when the same shall be platted and entered upon the Road Record, as herein required, and shall not before."

Due and proper record was thereafter made of all of said matters in the office of the county auditor, so that the resolution establishing said highway became effective ac-cording to its terms. Before the adoption of the reso-lution by the board of supervisors, notice, as required by law, was served upon all owners of real estate affected thereby. No substantial departure from the statute or usual method of procedure in the matter of establishing highways is shown, and the action of the board of super-visors was followed, within a reasonable time, by the open-ing of a highway, which, all parties concede, has since been more or less in public use.

Sections 34 and 35 were originally surveyed in 1851 by government surveyors, and this survey has been followed by numerous subsequent surveys. The difficulty, as claimed by counsel for appellee, with the several later surveys is that none of them is based upon the original government field notes, and that they are not shown to be in harmony therewith. The south line of the above sections is a correc-tion line, and the corners of the sections adjoining the same on the south are located a considerable distance east.

C. H. Reynolds, who was formerly county surveyor of Webster County, testified that, in 1896, he surveyed Sec-tion 5, Township 88, Range 28, lying immediately south of Section 34, and that, in doing so, he verified a prior sur-vey made by him of Section 34, locating the southeast cor-ner thereof. The field notes of his survey of Section 5 and

a plat thereof, duly certified, were recorded and entered upon a book kept for that purpose, which was offered in evidence upon the trial of this case. The witness further testified: .

"In surveying Section 5 and locating the northeast cor- ner, I had occasion to verify my survey by the southeast cor- ner of Section 34. At that time, to assist in verifying that corner, I ran in different directions. I ran lines east and west, that being the correction line, from the northeast cor- ner of Section 5 to the north quarter corner of Section 5; also checking on the southeast corner of Section 34, to cov- er measurement given on the correction off-set 673.8 feet between the two stones. * * * The government field notes, a copy of them, are still in existence. In the meas- urement that I made south from the northeast corner of Section 5, down to the quarter corner, where I discovered a stone or mark, I believe I followed the field notes."

Other measurements and lines run by this witness cor- roborate the correctness of his conclusion that a certain stone found by him at the southeast corner of Section 34 correctly marked the same. In 1896, F. S. Hoyt, county surveyor, made a survey and plat of Sections 34 and 35, at the request of the defendant Adam Wasem, which plat, prop- erly certified, was recorded in the surveyor's record, a book kept for that purpose, together with the field notes of his survey. The record of this survey corresponds with the sur- veys made by him, and corroborates the testimony of Reyn- olds. Some time prior to the commencement of this suit, C. A. Snook, county engineer, acting under the direction of the board of supervisors of Webster County, found the stones placed by Hoyt or other surveyors at the southeast and northeast corners of Section 34, and ran a straight line be- tween them. By doing so, he found that defendant's fence extended into the highway as follows:

"At the south end of the line, the fence was on the line;

1,000 feet north, I found the fence 2 feet east of the line between those 2 stones; at 2,300 feet north, the fence is 2 feet east of the line; at 2,640 feet, the fence is 1 foot west; at 3,000 feet, 6½ feet west; at 3,500 feet, 13 feet west; at 4,000 feet, 21½ feet west; at 4,500 feet, 29 feet west; and at 5,280 feet, which is the northeast corner of the section, the fence is 35½ feet west of the stone that I found there."

Section 534 of the Code requires county surveyors to "make all surveys of land within his county which he may be called upon to make, and the field notes and plats made by him shall be transcribed into a well-bound book, under his supervision, at the expense of the person requesting the survey, which book shall be kept in the county auditor's office, and his surveys shall be held as presumptively correct."

No evidence was offered on behalf of defendants indicating error in any of the surveys above referred to. The stone in the highway at the northeast corner of Section 34 and the northwest corner of Section 35 is treated by both parties as correctly located. Other surveys in the vicinity and on the correction line referred to by the witnesses to verify the results of their own work, to some extent corroborate the correctness of their testimony. In the absence of evidence showing error in the surveys offered in evidence and the location of the section line in question, we have no difficulty in finding that the fence of defendants extends into the highway, as claimed by plaintiff.

It is argued by counsel for appellee that plaintiff had a speedy, adequate, and complete remedy at law, and that, therefore, action for an injunction will not lie. As has already been stated, the highway was originally opened and maintained to its full width of 66 feet until 1910, when the owner of the land in Section 35 adjoining the highway moved his fence to the west, reducing the width thereof at the north end to a trifle less than 30 feet.

Section 1527-s17 of the 1913 Supplement to the Code imposes upon county and township boards the duty of improving public highways, and of removing all obstructions therein. The plaintiffs, in attempting to remove the obstruction in question, proceeded in accordance with the requirements of this statute. The highway originally established by the board of supervisors was on the section line, and, if the highway was, in fact, located and opened on the section line, then defendant's fence does not obstruct the same.

*Rose v. Gast,* (Iowa) 166 N. W. 683 (not officially reported), is cited as sustaining appellee's claim that injunction is not the proper remedy. The holding in that case, denying relief to the plaintiff, was not based upon the proposition that injunction would not lie in the name of the county charged with the duty of opening a public highway, or to remove obstructions therefrom, or to enjoin the owner of a fence in said highway from interfering with or preventing the proper authorities from removing fences or other obstructions from the highway, but was based upon the facts of that case, which showed that a highway established many years before had never been opened, and we refused to enjoin one of the owners from maintaining a fence within the limits of the supposed highway, as established. The case affords no assistance in the determination of the questions presented upon this appeal.

Assuming that the evidence shows that the highway, as opened, does not correspond with the highway as established, and that defendants' fences, in fact, encroach thereon, and that defendants offered violence to plaintiff's agents, who attempted to remove such obstructions, and thereby intimidated them, or otherwise prevented the removal of the obstruction, the court should have enjoined defendants from further interfering with the removal of the fence.

2. HIGHWAYS: correction of erroneous opening.

This action was not brought for the purpose of locating or
establishing lost corners or boundaries, but to restrain the
wrongful interference of defendants with the agents and
officers of plaintiff in the performance of their duties. Inci-
dental to the relief sought, the burden is cast upon the
plaintiff of proving that a highway was established, and
that defendants' fences in fact encroached thereon. This,
of course, called for proof of the true location of the sec-
tion line. In no other way could it be shown that the
highway opened does not correspond with the highway es-
tablished. Plaintiff could not proceed under Section 4228
of the Code of 1897 for the location and establishment of a
lost corner or disputed boundary, and could prevent the
threatened interference of defendants in no other way than
by injunction. *Dickinson County v. Fouse*, 112 Iowa 21.

There is a suggestion in the argument of counsel for
appellee that, if the road in question is not, in fact, lo-
cated upon the section line, it was diverted therefrom for
the purpose of avoiding a slough or pond near the south end
thereof; but there is nothing in their pleadings or evidence
to that effect, nor do we find any evidence in the record
that the fences complained of were erected in accordance
with the mounds, stakes, or marks of the commissioner ap-
pointed by the county auditor to locate and lay out the
highway, or that same was diverted for the purpose of
avoiding a pond. On the contrary, the record discloses that
the south end of the highway is low and wet, and that a
grade three feet high was erected, before the road was
suitable for travel. The evidence does not bring the case
within our holding in *Brause v. Fayette County*, 164 Iowa
606, and other like decisions of this court.

But it is argued by counsel for appellee that, by open-
ing said highway to its full width, and by the erection of
grades which have been worked and kept in repair, and by
permitting the Illinois Central and Chicago Great West-

ern Railway companies, whose tracks cross the same, to construct and, for a long period of time, maintain crossings and grades in connection therewith, acquiescence by the public in the highway as opened, and the fences as constructed, will be presumed. The doctrine of acquiescence has no application to public highways. The public is not required to open the highway to its full, established width, until necessity arises therefor. This question was fully discussed and decided in *Quinn v. Baage*, 138 Iowa 426, and later re-affirmed in *Bidwell v. McCuen*, 183 Iowa 633. See, also, *Pine v. Reynolds*, 187 Iowa 379.

We reach the conclusion that a highway was established on the section line, as claimed by plaintiff; that defendants' fences project into said highway, substantially as claimed by plaintiff; and that it not only has the right, but is charged with the duty, of removing the same therefrom.

Appellee claims that the land that will be enclosed by the fence, if moved, is underlaid with gypsum, which is of great value; but we do not see how this matter can be taken into consideration in determining whether an obstruction should be removed from a highway.

The decree of the court below is reversed, and cause remanded for decree in harmony herewith.—*Reversed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.