BRIDGET CLARKEN et al., Appellants, v. GERALD LENNON et al.,
Appellees.

KATE A. FALLON, Appellant, v. JOHN LAUFERSWEILER et al.,
Appellees.

HIGHWAYS: Alteration—Unallowable Alteration. A highway which
was established substantially on a designated line, but which was actu-
ally opened and maintained by the public authorities and fenced by
the various abutting property owners for more than a half century on
a line variant from the established line, may not be *summarily* changed
back to the established line and thereby made to embrace lands which
were theretofore undisturbed. (See Book of Anno., Vol. 1, Sec. 11007,
Anno. 70 *et seq.*)

Headnote 1: 29 C. J. pp. 506 (Anno.), 539, 540.

*Appeal from Webster District Court.*—B. R. BRYSON, Judge.

MARCH 15, 1927.

Action to enjoin the board of trustees of Douglas Township,
Webster County, Iowa, from removing certain fences which are
alleged to be obstructions on the public highway. Plaintiffs'
petitions were dismissed for want of equity; and they appeal.—
*Reversed and remanded.*

*Mitchell, Files & Mulholland* and *Healy & Breen*, for ap-
pellants.

*Kelleher & Mitchell*, for appellees.

ALBERT, J.—These two cases were consolidated for the pur-
pose of trial in the district court, and by agreement are con-
solidated for trial in this court, being submitted on the same
record and briefs and arguments.

The road in controversy is an east and west road, and runs
approximately through the center of Section 8 in Douglas Town-
ship. Clarken and Fodge own the north one half of the south-
west quarter of said Section 8, the same being fractional. Kate

A. Fallon is the owner of 48 acres in the southeast quarter of said Section 8, lying west of the right of way of the Minneapolis & St. Louis Railway Company. The lands of both Clarken and Fallon are bounded on the north by the center line of the section.

In 1867 or 1868, a petition was presented to the board of supervisors of Webster County, asking for a road through the "center of Sections 7, 8, 9, 10, and 11, or a road in that vicinity answering the same purpose, and in substance the same, and for the appointment of a commissioner to examine into the expediency of the proposed road." Such commissioner was appointed, who filed the report required by statute, recommending the establishment of the road. This report contains the following:

"He distinguished the line of said land by the proper mounds and stakes in the manner directed in his commission and prescribed by law, as will further appear by reference to the plat and field notes hereto attached and made a part of this report."

Acting thereon, the board of supervisors ordered:

"That said road be and the same is hereby declared established according to the report of the commissioner as shown by the plat and field notes accompanying and made a part of said report when the same shall be platted and entered upon the road record as having required, and not before, and the clerk is ordered to procure the services of a competent draftsman to enter said plat and field notes upon the road record. * * * It is further ordered by the board that the clerk of the board, so soon as said road records shall have been completed in relation to said roads, notify the proper township clerk to have said road opened and worked according to law, and furnish him with the field notes of the same."

Whereupon, or shortly thereafter, this proposed road was opened and improved as a highway; and from time to time thereafter, up to the time of the commencement of this suit, this road has been kept up as a highway, has been fenced by the respective owners, has been graded, graveled in part, and used as a public highway.

The trouble that arises in the case comes from the fact that, in the making of this road in the first instance, it did not follow

the center line of said section. At a point approximately 300 feet from the west line of the section, the south line of the road, as constructed, crosses the center line of the section, and from that point eastward, the road, as constructed, deflected to the north from said center line, to the extent that, when it reached the north and south center line of the section, the south boundary of the road, as constructed, was about 65 feet north of the east and west center line of the section. From there east, the road, as constructed, deflected slightly to the south, and at a point near the northeast corner of the Fallon land, the south line of the highway, as constructed, for a short distance crosses the center line of the section, but again immediately deflected to the north, before it left the Fallon land at a point where it crossed the right of way of the railway company, and continued in a northeasterly direction across a creek, and farther east again deflected to the south; and when it reached the east line of the section, the center of the road seems to have corresponded with the center line of the section. The proper officials are now attempting, so far as concerns the land of appellants, to construct the highway with the east and west center line of the section as the center of the proposed highway. We are furnished with a blue print, on which are shown the respective tracts of land in this section involved in this action, together with the road as originally constructed, and as it is proposed to be constructed by the proper officials at the present time. An inspection of this blue print shows that the west half mile, if constructed as proposed, will use the center line of the section as the center of the highway; but when the middle line (north and south) of the section is reached, it is platted to deflect to the south, so that, in the Fallon land, the north side of the highway, as proposed, will be a number of feet south of the center line of the section, thus putting all of the road on the Fallon land, and leaving a small strip of the Fallon land on the north side of the road. As originally constructed, the south side of the highway was a number of feet north of the center line of the section along the Clarken land, and hence no part of the highway was on the Clarken land, the distance between the south side of the highway, as constructed, and the Clarken land being something like 22 feet, and increasing as it proceeded eastward. As to the Fallon land, at the northwest corner, the highway, as construct-

ed, was 65 feet north of the north line of her land, and none of her land was used for the highway except a very small corner at the northeast corner.

The engineer in charge of this road improvement testifies that he was not able to find the government mound or stakes. He says he found a monument on the west end of the road, set by Mr. Parsons in 1918, but does not know that it corresponds with the government corner; that at the east end of the proposed road he found the corner stone, but it was not a government corner; that it was set by an engineer working for the county, in 1896; that he used these two stones in making the survey for the new location of the road. He testified:

"I have to assume for the correctness of my survey and the correctness of Mr. Parsons' survey. The mere placing of stones, without anything else, wouldn't show very much. There are plenty of stones out in the country. I never made a survey of the old road."

It is because of this proposed change in the location of this road that the respective appellants seek injunctive relief, which the district court refused. Appellees seek to justify the action of the district court on a number of cases of this court, among which are: Quinn v. Baage, 138 Iowa 426; Bidwell v. McCuen, 183 Iowa 633; Webster County v. Wasem Plaster Co., 188 Iowa 1158. Each and all of these cases are cases where the highway was properly laid and constructed, but the authorities had never utilized it to its full width, and the adjacent landowners' fences were within the highway, and it was sought to remove them as obstructions in the highway. This line of authorities has no application to the cases at bar.

Some complaint is made about the regularity of the proceedings of the board of supervisors in establishing the original highway. As we view the case, these questions are immaterial. The facts in the case briefly show (if we assume the regularity of the original proceedings) that, so far as the lands in controversy are concerned, a road was duly laid by the proper authorities on the east and west center line of this section in 1868; that, shortly thereafter, the proper authorities proceeded to construct this highway; and that, so far as the land in controversy is concerned, they built none of this highway on the lands of either of appellants, except at a small point in the northeast corner of

the Fallon land; that in fact, as constructed, the south side of the highway was many feet north of the center line of the section. This is true whether it be held to be a 66-foot highway or a narrower one. The question, therefore, is not a question of fences within a legally laid-out highway, but a question of whether or not, where the proper authorities have actually constructed and maintained a public highway for almost 60 years, they can subsequently summarily change the location of that highway, as is here attempted.

The evidence shows that this highway was fenced by the respective landowners, and that at one time there was maintained on the north side of the Fallon land a hedge, which has since been removed. We are of the opinion that, under these circumstances, the proper authorities cannot summarily relocate this road; because, by failing to construct the road on the line on which it was laid out, and not using any of the land of either of the appellants herein for the purpose of constructing said road, they abandoned their right to the land of appellants which lay within the boundaries of the road as originally laid out. This doctrine is not new to our practice, and has been announced on several occasions, the last being in the case of *Brause v. Fayette County*, 164 Iowa 606, where we said:

"We conclude that, under the facts, it must be determined that the highway as originally laid out, fenced, and continuously used, was the practical location of the road, and as such would control, as against subsequent surveys which, when applied to the recorded plat in its recitation of the midsection line, would fix a line different from that actually laid out [citing *Quinn v. Baage*, 138 Iowa 426]."

See, also, *Davies v. Huebner*, 45 Iowa 574; *Larson v. Fitzgerald*, 87 Iowa 402.

It is, therefore, our holding that, when the proper officials constructed the road in 1868, and continued to improve and use the same continuously ever since, that is the legal public highway, regardless of whether it complies with the field notes and plat and order of the board of supervisors originally made. By constructing the original highway as they did, not using any of the lands of appellants therefor, they abandoned their right to use the same, and are estopped from now claiming such right. This is true of all except a small corner of land at the northeast

corner of the Fallon land, where the road, as originally constructed, utilized that corner of the Fallon land. The Revision of 1860 provided that, unless otherwise provided, highways should be 66 feet in width; and as to this small corner of the Fallon land, the proper authorities are entitled to use the land lying within a boundary of 33 feet on either side of the original road as constructed.

The ruling of the district court, failing to correspond with this law, is erroneous, and therefore the case will be remanded for decree in accordance herewith.—*Reversed and remanded.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.